EXHIBIT B



**LRN**

# NON-DISCLOSURE AGREEMENT

This Agreement, dated December 2, 1999 by and between LRN, Inc. (hereinafter called "LRN"), and A. Merrill Phillips (hereinafter called "Receiver").

Whereas LRN and Receiver may engage in discussion or enter into other relationships in the course of which LRN may disclose certain "Information," as defined below, to Receiver. In consideration of the benefits that Receiver expects to derive from such discussions and relationships, Receiver agrees with LRN as follows:

1. "Information" shall include all information relating to LRN, including but not limited to, its business, customers, personnel, independent contractors, researchers, financial condition, plans, products, intellectual property, analysis, projects, processes, systems, marketing, research or development activities, and all technical or scientific information or know-how of LRN or of any other person or entity as to which LRN is obligated to maintain its confidence, which is disclosed to Receiver either orally, or in diagram, electronic, digital, written or other recorded form that is not:

     (a) already known to Receiver prior to the date of this Agreement or independently developed by Receiver after the date hereof;

     (b) already publicly available or that becomes publicly available other than through a breach of this Agreement by Receiver; or

     (c) rightfully received by Receiver from a third party without similar restriction from such party and the disclosure of which, by such third party does not constitute a violation of an obligation by such third party to LRN; or

     (d) required to be disclosed pursuant to subpoena or other judicial process.

2. Except as provided below, Receiver will hold in confidence the Information and will not, without the prior consent of LRN, either directly or indirectly:

     (a) make or use, for Receiver's own benefit or otherwise, any portion of the Information, including but not limited to any commercial use thereof; or

Legal Research Network, Inc.
2029 Century Park East, Suite 1370
Los Angeles, California 90067
Telephone 310.557.2110
Facsimile 310.557.2109
Website http://www.lrn.com

The Legal Knowledge Company



(b) duplicate, disseminate, disclose, or transfer any portion of the material or media on which the Information is presented to any other person, governmental agency, firm business, or other entity.

3.  That because unauthorized disclosure of Information can have a severe adverse impact on LRN's present and future competitive position in the marketplace, that cannot be adequately compensated by damages, LRN is entitled to obtain injunctive relief in addition to all other equitable and legal remedies available to it in connection therewith.

4.  That no license under any patent now or hereafter obtained is granted, agreed to be granted, or implied by this Nondisclosure Agreement, or by the disclosure of the subject Information.

5.  To return all subject Information which has been provided, in written or other form, by LRN and any copies of such Information upon completion of the evaluation or within 30 days from the date of this Agreement, whichever occurs first.

6.  That the obligations imposed under this Nondisclosure Agreement, unless earlier terminated by an exception, expire five years after the disclosure.

7.  That this Agreement shall be governed by the Laws of the State of California. This document constitutes the entire agreement between LRN and Receiver. There are no understandings, agreements, or representations, express or implied, not specified herein. This Agreement may not be amended except in writing, and signed by both parties.

8.  That Receiver hereby agrees not to use subject Information itself or with third parties to circumvent the intent of this Agreement, or to obtain economic compensation without the written consent of LRN.


LRN, INC.                                      *A. Merrill Philips*
                                               _____
                                                      (Receiver)

By: _____              By: _____
         (Signature)                              (Signature)

Name: _Scott Fillenworth_____           Name: _A. Merrill Phillips_____

Title: _Vice President, Sales___         Title: _Individual_____

EXHIBIT C

# EXHIBIT D

April 12, 2000

LRN, Inc.
2029 Century Park East
Suite 1370
Los Angeles, California 90067

Gentlemen:

This letter confirms my agreement regarding certain matters relating to my employment with LRN, Inc. ("LRN"). I am entering into this agreement in recognition of certain facts -- namely, that

(a) LRN is engaged in the worldwide business of creating, managing, and disseminating legal knowledge in such forms including but not limited to legal research and analysis, legal compliance and education, and knowledge management and knowledge management systems (the "Business");

(b) LRN possesses significant technical know-how, sales know-how, trade secrets, and other Confidential Information (as defined below) that it has developed and will continue to develop, and which information is and will be proprietary to it and an exceedingly valuable asset;

(c) my relationship with LRN has given me, and will continue to give me, access to and possession of such know-how, trade secrets and other Confidential Information;

(d) LRN has a legitimate business interest in protecting the confidentiality of such know-how, trade secrets and other Confidential Information;

(e) LRN is a pioneer in business of creating, managing, and disseminating legal knowledge and has developed, and will continue to develop significant goodwill, including but not limited to significant

relationships and contacts with current and future customers and prospective customers; and

(f) LRN has a legitimate business interest in protecting its goodwill from competition on my part to the extent provided below.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby agree as follows:

1. I will not (except as necessary to perform specific employment duties with LRN as directed by LRN), while in the employ of LRN or thereafter, communicate or divulge to, or use for the benefit of myself or any other person, firm, association, or corporation, any Confidential Information. All records, files, memoranda, reports, price lists, customer lists, drawings, plans, sketches, documents, equipment, and the like, relating to the business of LRN or to any Confidential Information, which I may use or prepare or come into contact with, shall remain the sole property of LRN, and I will return all such items to LRN immediately upon LRN's request, or immediately upon termination of my employment with LRN with or without such request.

2. For purposes of this agreement, "Confidential Information" includes any information concerning: any inventions; discoveries; improvements; processes; formulas; apparatus; equipment; methods; trade secrets; research; secret data; technical know-how; computer files and programs; sales know-how; jobs know-how; customer lists; the identity of any customers; customers, including but not limited to the identity of any products or services furnished to specific customers, and the nature of any customer preferences or other special requirements imposed by particular customers; prices, including but not limited to pricing methods, pricing formulas, margins, discounts, concessions, and adjustments; costs, including but not limited to researcher fees and any methods and formulas used in setting researcher fees; or any other confidential matters or information possessed, owned, or used by LRN that may be communicated to, acquired by, or learned of by me in the course of or as a result of my employment with LRN or otherwise.

3. I hereby covenant and agree that, for a period commencing on the date hereof and ending one year following the termination of my employment with LRN, I will not, directly or indirectly, in any state or county in the United States or any other foreign country or jurisdiction in which LRN is presently doing business or may hereafter do business, do, or directly or indirectly aid any other person or entity to do, any of the following:

(i) engage in the Business, any aspect of the Business; or have any interest or involvement (whether as an agent, employee, consultant, advisor, creditor, proprietor, partner, stockholder, officer, director or other type of principal) in, or render any services to, any person, firm, corporation, association or other entity which is engaged in or becomes engaged in the Business;

(ii) solicit, directly or indirectly, any Business from any past or present customer of LRN;

(iii) request or advise any past or present customer of LRN to withdraw, curtail or cancel its business dealings with LRN;

(iv) participate or assist in the development, manufacture, sale or procurement, or in the development, operation, management or financing of any Business competitive with the Business; or

(v) solicit any past, present or future employee, agent or independent contractor of LRN to work or consult for any person.

4. I hereby acknowledge and agree that a monetary remedy for any breach of these covenants will be inadequate, and will be impracticable and extremely difficult to prove, that such a breach would cause irreparable harm, and that LRN shall be entitled to temporary and permanent injunctive relief.

5. The covenants contained herein constitute a series of separate covenants, one for each of those counties and states in the United States and each of those foreign countries or jurisdictions referred to above. Except for geographic coverage, each such separate covenant contained herein

shall be deemed identical in terms. If in any judicial proceeding a court shall hold unenforceable any of the separate covenants deemed included herein, then such unenforceable covenant or covenants shall be deemed eliminated from the provisions of this agreement for the purpose of such proceeding or changed to the extent necessary to permit the remaining separate covenants to be enforced in such proceeding. Each paragraph, clause, sub-clause and provision of this agreement shall be severable from each other, and, if for any reason any paragraph, clause, sub-clause or provision is invalid or unenforceable, such invalidity or unenforceability shall not prejudice or in any way affect the validity or enforceability of any other paragraph, clause, sub-clause or provision. This agreement and each paragraph, clause, sub-clause and provision hereof shall be read and construed so as to give full effect thereto, subject only to any contrary provision of law. To the extent that this agreement or any paragraph, clause, sub-clause or provision hereof would, but for the provisions of this paragraph, be construed as void and ineffective, it shall nevertheless be a valid agreement, covenant, paragraph, clause, sub-clause or provision as the case may be, enforceable to the full extent to which it is not contrary to any provision of law.

6. Nothing herein shall be deemed to affect the fact that my employment with LRN is at-will and terminable by either party at any time with or without cause.

Sincerely,

Julie K. Moriarty

# EXHIBIT E

# NONDISCLOSURE AGREEMENT

This Agreement, dated April 12, 2000 by and between LRN, Inc. (hereinafter called "LRN"), and Julie K. Moriarty (hereinafter called "Receiver").

Whereas LRN and Receiver may engage in discussion or enter into other relationships in the course of which LRN may disclose certain "Information," as defined below, to Receiver. In consideration of the benefits that Receiver expects to derive from such discussions and relationships, Receiver agrees with LRN as follows:

1. "Information" shall include all information relating to LRN, including but not limited to, its business, customers, personnel, independent contractors, researchers, financial condition, plans, products, intellectual property, analysis, projects, processes, systems, marketing, research or development activities, and all technical or scientific information or know-how of LRN or of any other person or entity as to which LRN is obligated to maintain its confidence, which is disclosed to Receiver either orally, or in diagram, electronic, digital, written or other recorded form that is not:

    (a) already known to Receiver prior to the date of this Agreement or independently developed by Receiver after the date hereof;

    (b) already publicly available or that becomes publicly available other than through a breach of this Agreement by Receiver; or

    (c) rightfully received by Receiver from a third party without similar restriction from such party and the disclosure of which, by such third party does not constitute a violation of an obligation by such third party to LRN; or

    (d) required to be disclosed pursuant to subpoena or other judicial process.

2. Except as provided below, Receiver will hold in confidence the Information and will not, without the prior consent of LRN, either directly or indirectly:

    (a) make or use, for Receiver's own benefit or otherwise, any portion of the Information, including but not limited to any commercial use thereof; or

    (b) duplicate, disseminate, disclose, or transfer any portion of the material or media on which the Information is presented to any other person, governmental agency, firm business, or other entity.

3. That because unauthorized disclosure of Information can have a severe adverse impact on LRN's present and future competitive position in the marketplace, that cannot be adequately compensated by damages, LRN is entitled to obtain injunctive relief in addition to all other equitable and legal remedies available to it in connection therewith.

4. That no license under any patent now or hereafter obtained is granted, agreed to be granted, or implied by this Nondisclosure Agreement, or by the disclosure of the subject Information.

5. To return all subject Information which has been provided, in written or other form, by LRN and any copies of such Information upon completion of the evaluation or within 30 days from the date of this Agreement, whichever occurs first.

6. That the obligations imposed under this Nondisclosure Agreement, unless earlier terminated by an exception, expire five years after the disclosure.

7. That this Agreement shall be governed by the Laws of the State of California. This document constitutes the entire agreement between LRN and Receiver. There are no understandings, agreements, or representations, express or implied, not specified herein. This Agreement may not be amended except in writing, and signed by both parties.

8. That Receiver hereby agrees not to use subject Information itself or with third parties, to circumvent the intent of this Agreement, or to obtain economic compensation without the written consent of LRN.

LRN, INC.

By: _____
        (Signature)

Name: B. Robert Suh

Title: Vice President & CFO

By: _____
        (Signature)

Name: ____ Julie Moriarty ____

Title: ____ Individual ____

e:/lrn/forms/nondisc.agt

EXHIBIT F

**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com

JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004  F 310.595.3304

July 13, 2005

**VIA HAND DELIVERY**

Ms. A. Merrill Phillips
3303 Water Street, N.W., Apt. 3N
Washington, D.C. 20007

Re:    **Demand To Cease And Desist From Engaging In Behavior That Violates Your Written Employment Agreement With LRN, The Legal Knowledge Company, Inc. And In Violation Of Statutory And Common Law**

Dear Ms. Phillips:

This law firm has been retained to represent your former employer, LRN, The Legal Knowledge Company, Inc. ("LRN"), in connection with certain matters involving your activities following your separation of employment. Very recently, it has come to LRN's attention that you may be engaging in behavior that violates your written employment agreement with LRN, which contains certain provisions on non-competition and protection of LRN's trade secrets and/or confidential proprietary information.

I.    **Your Potentially Unlawful And Improper Conduct**

Very recently, it has come to LRN's attention that you may be engaged in the following:

1.    Impermissibly being employed by a competitor of LRN;

2.    Impermissibly and unlawfully using and disclosing "Confidential Information," as defined and prohibited by the express written employment agreement that you entered into with LRN;

3.    Misappropriating and misusing LRN's trade secrets and/or confidential proprietary information, as otherwise defined

by law, including confidential client data and confidential employee/personnel data;

4.    Unlawfully interfering with the contractual relations and perspective economic advantage of LRN, by soliciting its clients and employees.

## II.    Your Employment Agreement With LRN

On December 2, 1999, you entered into a written employment agreement with LRN, a copy of which is attached as Exhibit "A." The employment agreement expressly provided that you would receive access to LRN's trade secrets and/or confidential proprietary information and that you would not disclose such information following your termination of employment, or otherwise compete with LRN for a period of one year following your termination of employment by accepting a job with a competitor.

With respect to the proprietary nature of LRN's business, your written employment agreement stated:

(a)    LRN is engaged in the worldwide business of creating, managing, and disseminating legal knowledge in such forms including but not limited to legal research and analysis, legal compliance and education, and knowledge management and knowledge management systems (the "Business");

(b)    LRN possesses significant technical know-how, sales know-how, trade secrets, and other Confidential Information (as defined below) that it has developed and will continue to develop, and which information is and will be proprietary to it and an exceedingly valuable asset;

(c)    my relationship with LRN has given me, and will continue to give me, access to and possession of such know-how, trade secrets and other Confidential Information;

(d)    LRN has a legitimate business interest in protecting the confidentiality of such know-how, trade secrets and other Confidential Information;

(e)    LRN is a pioneer in business of creating, managing, and disseminating legal knowledge and has developed, and will continue to develop significant goodwill, including but not limited to significant relationship and contacts with current and future customers and prospective customers; and

(f)    LRN has a legitimate business interest in protecting its goodwill from competition on my part to the extent provided below.

With respect to your express written agreement not to use or disclose LRN's trade secrets and/or confidential proprietary information, your employment agreement stated:

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby agree as follows:

1.    I will not (except as necessary to perform specific employment duties with LRN as directed by LRN), while in the employ of LRN or thereafter, communicate or divulge to, or use for the benefit of myself or any other person, firm, association, or corporation, any Confidential Information. All records, files, memoranda, reports, price lists, customer lists, drawings, plans, sketches, documents, equipment, and the like, relating to the business of LRN or to any Confidential Information, which I may use to prepare or come into contact with, shall remain the sole property of LRN, and I will return all such items to LRN immediately upon LRN's request, or immediately upon termination of my employment with LRN with or without such request.

2.    For purposes of this agreement, "Confidential Information" includes any information concerning: any inventions; discoveries; improvements; processes; formulas; apparatus; equipment; methods; trade secrets; research; secret data; technical know-how; computer files and programs; sales know-how; jobs know-how; customer lists; the identity of any customers; customers, including but not limited to the identity of any products or services furnished to specific customers, and the nature of any customer preferences or other special requirements imposed by particular customers; prices, including but not limited to pricing methods, pricing formulas, margins, discounts, concessions, and adjustments; costs, including but not limited to researcher fees and any methods and formulas used in setting researcher fees; or any other confidential matters or information possessed, owned, or used by LRN that may be communicated to, acquired by, or learned of by me in the course of or as a result of my employment with LRN or otherwise.

More specifically, your written employment agreement with LRN **prohibits you from disclosing or using  LRN's trade secrets and/or confidential proprietary information,**

Ms. A. Merrill Phillips
July 13, 2005
Page 4

**soliciting business from LRN's customers and/or working for LRN's competitors** as follows:

        3.    I hereby covenant and agree that, for a period commencing on the date hereof and ending one year following the termination of my employment with LRN, I will not, directly or indirectly, in any state or country in the United States or any other foreign country or jurisdiction in which LRN is presently doing business or may hereafter do business [the "Business"], do, or directly or indirectly aid any other person or entity to do, any of the following:

        (i) engage in the Business, any aspect of the Business; or have any interest or involvement (whether as an agent, employee, consultant, advisor, creditor, proprietor, partner, stockholder, officer, director or other type of principal) in, or render any services to, any engaged in or becomes engaged in the Business;

        (ii) solicit, directly or indirectly, any Business from any past or present customer of LRN;

        (iii) request or advise any past or present customer of LRN to withdraw, curtail or cancel its business dealings with LRN;

        (iv) participate or assist in the development, manufacture, sale or procurement, or in the development, operation, management or financing of any Business competitive with the Business; or

        (v) solicit any past, present or future employee, agent or independent contractor of LRN to work or consult for any person.

Your employment agreement further provides that you agreed that LRN would be entitled to **injunctive relief for any violation** of the terms stated above:

        4.    I hereby acknowledge and agree that a monetary remedy for any breach of these covenants will be inadequate, and will be impracticable and extremely difficult to prove, that such a breach would cause irreparable harm, and that LRN shall be entitled to temporary and permanent injunctive relief.

Ms. A. Merrill Phillips
July 13, 2005
Page 5

**III.    The Standards For Non-Disclosure Under The Uniform Trade Secrets Act**

In addition to your written employment agreement, there are various statutory prohibitions on unfair competition by the use of a former employer's trade secrets and/or confidential proprietary information.  Under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(d),[1] a "trade secret" is defined as any "information" or "compilation" that:

1.    Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2.    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The "information" and "compilation" of data regarding LRN's clients clearly fits within the definition of a "trade secret" under the Uniform Trade Secrets Act, because such information shows the business needs of particular clients and/or prospective clients, and the business services those clients and/or prospective clients, desire to purchase.  Therefore, anyone acquiring such information is able to market their own services to such clients and/or prospective clients, based on their specific needs.

The "information" and "compilation" of LRN's employee or personnel data also clearly fits within the definition of a "trade secret" under the Uniform Trade Secrets Act, because such information would enable anyone in its possession to improperly solicit or recruit LRN's employees.  More precisely, the confidential information regarding LRN's employees provides an independent economic value because it contains confidential salary and compensation information, job duties, territorial assignments, customer and client relationships, and employee performance information.  In the hands of a competitor, such information would allow the competitor to target and recruit LRN's employees based on this data.

It is undisputed that LRN took significant efforts to keep such client and/or prospective client information and employee information secret so that it would not be disclosed to anyone outside the company.  This is shown by, among other things, LRN's written employment agreement with you.

---

[1] The Uniform Trade Secrets Act is codified in the California Civil Code and protects LRN's interests as a company with its principal place of business in California.  The Uniform Trade Secrets Act also is codified in each of the other states where LRN does business, the states where your employer does business and your area of residence.

To be sure, the employment agreement between you and LRN was specifically designed to prevent certain types of behavior that LRN believes you may currently be engaged in your current employment. Your conduct, therefore, may constitute an unlawful misappropriation of LRN's trade secrets and/or confidential proprietary information.

Under the Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(b), "misappropriation" of "trade secrets" means:

1.    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2.    Disclosure or use of a trade secret of another without express or implied consent by a person who:

    (a) used improper means to acquire knowledge of the trade secret; or

    (b) at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

        (i)   derived from or through a person who had utilized improper means to acquire it;

        (ii)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

    (c) before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

## IV.    Demand To Cease And Desist, And Request To Confirm Your Agreement To Do So

This letter is a formal request that you cease and desist with all activities that violate, or potentially violate, your written employment agreement and/or the Uniform Trade Secrets Act and/or common law. This letter also serves to place you on notice that LRN intends to reserve all of its rights under its written employment agreement with you, as well as all of its rights under the Uniform Trade Secrets Act, and/or common law, as described herein.

Currently, it is LRN's clear intent to avoid litigation. On the other hand, if LRN is forced to litigate this matter, it may pursue claims against you, as an individual, and against your current employer, jointly and severally, for "breach of written contract," "breach of implied covenant of

good faith and fair dealing," "misappropriation of trade secrets," "conversion," "intentional misrepresentation," "negligent misrepresentation," "intentional interference with prospective economic advantage," "negligent interference with prospective economic advantage," and "violation of the Uniform Trade Secrets Act." This law firm has litigators in its offices in the District of Columbia, New Jersey and Virginia who, if necessary, are ready to pursue these claims, in the form of a Temporary Restraining Order and Civil Complaint for Injunctive Relief and/or Monetary Damages.

LRN is interested in your prompt response on these issues. Therefore, LRN requests that you sign the attached Affidavit, promising that:

1. You have not and will in the future cease and desist from all conduct or activities that violate your agreement not to use or disclose LRN's "Confidential Information," as defined and prohibited by the written employment agreement executed between you and LRN;

2. You have not and will in the future make not any use of LRN's trade secrets and/or confidential proprietary information as defined by the Uniform Trade Secrets Act, including its client lists and information on client transactions, contemplated transactions, marketing and pricing information;

3. You have not and will in the future stop using LRN's trade secrets and/or confidential proprietary information to solicit its clients and/or potential clients on behalf of yourself or on behalf of any other business entity;

4. You have not and will in the future stop using LRN's trade secrets and/or confidential proprietary information to solicit LRN's employees to leave the company;

5. You will return to LRN all originals and/or copies of any of its documents, records, computer files, databases, client lists, information or other materials of a confidential or proprietary nature presently in your possession or under your control;

6. You have not and will in the future cease making representations about LRN's business operations, its personnel or employment policies, its client relationships, its client contracts, its client pricing information, its marketing plans and strategies, its projected or historical revenues, its employee turnover, its employee

Ms. A. Merrill Phillips
July 13, 2005
Page 8

compensation or benefit information, and any of its
confidential business practices;

7.    You have not and will in the future cease making any
negative, untruthful or disparaging remarks about LRN, its
business practices, or its treatment of you as an employee
or its treatment of any other current or former employee;
and

8.    You have not and will in the future cease any interference
or attempted interference with any business relationship
between LRN and any of its clients or employees.

A copy of the Affidavit is attached hereto as Exhibit "B." We will also be sending a copy
of this Affidavit to your employer, with a letter to their in-house legal counsel.

**LRN requests that you return the attached Affidavit, signed and notarized, no later
than 5:00 p.m. Pacific Time on Tuesday, July 19, 2005.** The signed Affidavit may be sent to
my attention, as follows: Jon D. Meer, DLA Piper Rudnick Gray Cary US LLP, 1999 Avenue of
the Stars, Fourth Floor, Los Angeles, California 90067, facsimile number (310) 595-3304,
telephone number (310) 595-3004. Alternatively, the signed Affidavit may be sent to one of my
Partners in the District of Columbia, as follows: Roxane Marenberg, DLA Piper Rudnick Gray
Cary US LLP, 1200 Nineteenth Street, N.W., Seventh Floor, Washington, DC 20036, facsimile
number (202) 223-2085, telephone number (202) 861-3419.

If there is anything that you or your counsel would like to discuss prior to July 19, 2005,
please call me at (310) 595-3004, or my Partner, Roxane Marenberg, at (202) 861-3419. If you
prefer, you may also directly contact Julie Molleston at LRN, at telephone number (310) 209-
5400.

We look forward to receiving your prompt response.

Very truly yours,

**DLA PIPER RUDNICK GRAY CARY US LLP**


Jon D. Meer

JDM/il
Enclosures
cc:   Julie Molleston (via facsimile)

~LOSA1:132624.v2

bcc:    Roxane S. Marenberg, Esq.

# **AFFIDAVIT**

District of Columbia,              )
                                                      )        ss.
United States of America       )

I, A. MERRILL PHILLIPS, hereby swear and attest as follows:

1.      I have personal knowledge of the facts contained in this Affidavit and if called as a witness, could and would testify as to their accuracy.

2.      I entered into a written employment agreement with LRN, The Legal Knowledge Company, Inc. ("LRN"), which prohibits unfair competition with LRN by using or disclosing its trade secrets and/or confidential proprietary information while working for a competitor, and more generally, defines and prohibits use of LRN's "Confidential Information," in any capacity.  A copy of this agreement is attached hereto as Exhibit "A."  I hereby agree to follow each of the terms contained in this employment agreement as described herein and agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, if I violate this written employment agreement in the future.

3.      I also hereby agree to follow each of the terms of the Uniform Trade Secrets Act, as that statute applies to any trade secrets acquired while employed at LRN and agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, if I violate this written employment agreement in the future.

4.      More specifically, I agree that I have not used or shared any trade secrets and/or confidential proprietary information of LRN, that I have not violated any of the items in this paragraph identified as subsections (a) - (h), and that I agree to:

(a)      cease and desist from all conduct or activities that violate my agreement not to use or disclose LRN's "Confidential Information," as defined and prohibited by the written employment agreement executed between you and LRN;

(b)      Not to make any use of LRN's trade secrets and/or confidential proprietary information as defined by the Uniform Trade Secrets Act, including its client lists and information on client and/or potential client transactions, contemplated transactions, marketing and pricing information;

(c)      Immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit its clients and/or potential clients, on behalf of myself or on behalf of any other business entity;

(d)      Immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit LRN's employees to leave the company;

(e)      Immediately return to LRN all originals and/or copies of any of its documents, records, computer files, databases, client lists, information or other materials of a confidential or proprietary nature presently in my possession or under my control;

(f)      Immediately cease making representations about LRN's business operations, its personnel or employment policies, its client relationships, its client contracts, its client pricing information, its marketing plans and strategies, its projected or historical revenues,

2

its employee turnover, its employee compensation or benefit information, and any of its confidential business practices;

(g)    Immediately cease making any negative, untruthful or disparaging remarks about LRN, its business practices, or its treatment of me as an employee or its treatment of any other current or former employee; and

(h)    Immediately cease any interference or attempted interference with any business relationship between LRN and any of its clients and/or potential clients or employees.

I further agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, for any subsequent violation of the promises and covenants contained in this Affidavit.

I declare under penalty of perjury under the laws of the District of Columbia and the United States of America that the foregoing is true and correct.

Executed this ___ day of July, 2005, at Washington, D.C.

_____

A. MERRILL PHILLIPS

Notary Public:

By:_____

~LOSA1:132628.v2
307008-1

# EXHIBIT G