# EXHIBIT G

**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com


JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004  F 310.595.3304


July 12, 2005


**VIA OVERNIGHT DELIVERY**

Ms. Julie K. Moriarty
8122 King Arthurs Court
Manassas, VA  20112

Re:    **Demand To Cease And Desist From Using Confidential Proprietary
Information And/Or Trade Secrets In Breach Of Your Confidential
Obligations With LRN, The Legal Knowledge Company, Inc. And In
Violation Of Statutory And Common Law**

Dear Ms. Moriarty:

      This law firm has been retained to represent your former employer, LRN, The Legal
Knowledge Company, Inc. ("LRN"), in connection with certain matters involving your activities
following your separation of employment. Very recently, it has come to LRN's attention that you
may be engaging in behavior that violates your written employment agreement with LRN,
which contains certain prohibitions on non-competition and protection of LRN's trade secrets
and/or confidential proprietary information. This letter is intended to seek your agreement to
cease and desist from any unlawful conduct, or potentially unlawful conduct, without the need to
consider litigation.

**I.**      **Your Potentially Unlawful And Improper Conduct**

      Very recently, it has come to LRN's attention that you may be engaged in the following:

      1.     Impermissibly and unlawfully using and disclosing
            "Confidential Information," as defined and prohibited by
            the express written employment agreement that you entered
            into with LRN;

Ms. Julie K. Moriarty
July 12, 2005
Page 2

> 2. Misappropriating and misusing LRN's trade secrets and/or confidential proprietary information, as otherwise defined by law, including confidential client data and confidential employee/personnel data;
>
> 3. Unlawfully interfering with the contractual relations and perspective economic advantage of LRN, by soliciting its clients and employees.

## II.    Your Employment Agreement With LRN

On April 12, 2000, you entered into a written employment agreement with LRN, a copy of which is attached as Exhibit "A." The employment agreement expressly provided that you would receive access to LRN's trade secrets and/or confidential proprietary information and that you would not disclose such information following your termination of employment, or otherwise unlawfully compete with LRN by accepting a job with a competitor.

With respect to the proprietary nature of LRN's business, your written employment agreement stated:

> (a) LRN is engaged in the worldwide business of creating, managing, and disseminating legal knowledge in such forms including but not limited to legal research and analysis, legal compliance and education, and knowledge management and knowledge management systems (the "Business");
>
> (b) LRN possesses significant technical know-how, sales know-how, trade secrets, and other Confidential Information (as defined below) that it has developed and will continue to develop, and which information is and will be proprietary to it and an exceedingly valuable asset;
>
> (c) my relationship with LRN has given me, and will continue to give me, access to and possession of such know-how, trade secrets and other Confidential Information;
>
> (d) LRN has a legitimate business interest in protecting the confidentiality of such know-how, trade secrets and other Confidential Information;
>
> (e) LRN is a pioneer in business of creating, managing, and disseminating legal knowledge and has developed, and will continue to develop significant goodwill, including but not limited to significant relationship and contacts with current and future customers and prospective customers; and

Ms. Julie K. Moriarty
July 12, 2005
Page 3

    (f) LRN has a legitimate business interest in protecting its goodwill from competition on my part to the extent provided below.

With respect to your express written agreement not to use or disclose LRN's trade secrets and/or confidential proprietary information, your employment agreement stated:

    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby agree as follows:

    1. I will not (except as necessary to perform specific employment duties with LRN as directed by LRN), while in the employ of LRN or thereafter, communicate or divulge to, or use for the benefit of myself or any other person, firm, association, or corporation, any Confidential Information. All records, files, memoranda, reports, price lists, customer lists, drawings, plans, sketches, documents, equipment, and the like, relating to the business of LRN or to any Confidential Information, which I may use to prepare or come into contact with, shall remain the sole property of LRN, and I will return all such items to LRN immediately upon LRN's request, or immediately upon termination of my employment with LRN with or without such request.

    2. For purposes of this agreement, "Confidential Information" includes any information concerning: any inventions; discoveries; improvements; processes; formulas; apparatus; equipment; methods; trade secrets; research; secret data; technical know-how; computer files and programs; sales know-how; jobs know-how; customer lists; the identity of any customers; customers, including but not limited to the identity of any products or services furnished to specific customers, and the nature of any customer preferences or other special requirements imposed by particular customers; prices, including but not limited to pricing methods, pricing formulas, margins, discounts, concessions, and adjustments; costs, including but not limited to researcher fees and any methods and formulas used in setting researcher fees; or any other confidential matters or information possessed, owned, or used by LRN that may be communicated to, acquired by, or learned of by me in the course of or as a result of my employment with LRN or otherwise.

Ms. Julie K. Moriarty
July 12, 2005
Page 4

More specifically, your written employment agreement with LRN provided **a prohibition on non-disclosure, non-use and non-solicitation of LRN's trade secrets and/or confidential proprietary information**, as follows:

3.  I hereby covenant and agree that, for a period commencing on the date hereof and ending one year following the termination of my employment with LRN, I will not, directly or indirectly, in any state or country in the United States or any other foreign country or jurisdiction in which LRN is presently doing business or may hereafter do business [the "Business"], do, or directly or indirectly aid any other person or entity to do, any of the following:

(i)  engage in the Business, any aspect of the Business; or have any interest or involvement (whether as an agent, employee, consultant, advisor, creditor, proprietor, partner, stockholder, officer, director or other type of principal) in, or render any services to, any engaged in or becomes engaged in the Business;

(ii)  solicit, directly or indirectly, any Business from any past or present customer of LRN;

(iii)  request or advise any past or present customer of LRN to withdraw, curtail or cancel its business dealings with LRN;

(iv)  participate or assist in the development, manufacture, sale or procurement, or in the development, operation, management or financing of any Business competitive with the Business; or

(v)  solicit any past, present or future employee, agent or independent contractor of LRN to work or consult for any person.

Your employment agreement further provides that you agreed that LRN would be entitled to **injunctive relief for any violation** of the terms stated above:

4.  I hereby acknowledge and agree that a monetary remedy for any breach of these covenants will be inadequate, and will be impracticable and extremely difficult to prove, that such a breach would cause irreparable harm, and that LRN shall be entitled to temporary and permanent injunctive relief.

Ms. Julie K. Moriarty
July 12, 2005
Page 5

**III.    The Standards For Non-Disclosure Under The Uniform Trade Secrets Act**

In addition to your written employment agreement, there are various statutory prohibitions on unfair competition by the use of a former employer's trade secrets and/or confidential proprietary information.  Under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(d),[1] a "trade secret" is defined as any "information" or "compilation" that:

1.  Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The "information" and "compilation" of data regarding LRN's clients clearly fits within the definition of a "trade secret" under the Uniform Trade Secrets Act, because such information shows the business needs of particular clients and the business services those clients desire to purchase.  Therefore, anyone acquiring such information is able to market their own services to such clients, based on their specific needs.

The "information" and "compilation" of LRN's employee or personnel data also clearly fits within the definition of a "trade secret" under the Uniform Trade Secrets Act, because such information would enable anyone in its possession to improperly solicit or recruit LRN's employees.  More precisely, the confidential information regarding LRN's employees provides an independent economic value because it contains confidential salary and compensation information, job duties, territorial assignments, customer and client relationships, and employee performance information.  In the hands of a competitor, such information would allow the competitor to target and recruit LRN's employees based on this data.

It is undisputed that LRN took significant efforts to keep such information client and employee information secret so that it would not be disclosed to anyone outside the company.  This is shown by, among other things, LRN's written employment agreement with you, containing the above provisions designed to protect the secrecy of its trade secrets and/or confidential proprietary information.

_____

[1] The Uniform Trade Secrets Act is codified in the California Civil Code and protects LRN's interests as a company with its principal place of business in California.  The Uniform Trade Secrets Act also is codified in each of the other states where LRN does business, the states where your employer does business and your area of residence.

To be sure, the employment agreement between you and LRN was specifically designed to prevent the very same type of behavior that you are currently engaged in your current employment. Your conduct, therefore, may constitute an unlawful misappropriation of LRN's trade secrets and/or confidential proprietary information.

Under the Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(b), "misappropriation" of "trade secrets" means:

1.   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2.   Disclosure or use of a trade secret of another without express or implied consent by a person who:

(a) used improper means to acquire knowledge of the trade secret; or

(b) at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i)   derived from or through a person who had utilized improper means to acquire it;

(ii)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(c) before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

## IV.   Demand To Cease And Desist, And Request To Confirm Your Agreement To Do So

As stated above, the purpose of this letter is to explore all reasonable attempts to avoid litigation. This letter, therefore, is meant to formally request that you cease and desist with all activities that violate, or potentially violate, your written employment agreements and/or the Uniform Trade Secrets Act, as well as to place you on notice that LRN intends to fully enforce its rights under its written employment agreement with you, as well as its rights under the Uniform Trade Secrets Act.

Ms. Julie K. Moriarty
July 12, 2005
Page 7

Currently, it is LRN's clear intent to avoid litigation. In the context of the current situation, litigation can be avoided if you agree to sign the enclosed declaration, as discussed below. On the other hand, if LRN is forced to litigate this matter, it may pursue claims against you, as an individual, and against your current employer, jointly and severally, for "breach of written contract," "breach of implied covenant of good faith and fair dealing," "misappropriation of trade secrets," "conversion," "intentional misrepresentation," "negligent misrepresentation," "intentional interference with prospective economic advantage," "negligent interference with prospective economic advantage," and "violation of the Uniform Trade Secrets Act." This law firm has litigators in its offices in the District of Columbia, New Jersey and Virginia who, if necessary, are ready to pursue these claims, in the form of a Temporary Restraining Order and Civil Complaint for Injunctive Relief and/or Monetary Damages.

Before considering whether to file such a formal lawsuit against you and others acting in concert with you, LRN requests that you sign the attached Affidavit, promising that:

1. You cease and desist from all conduct or activities that violate your agreement not to use or disclose LRN's "Confidential Information," as defined and prohibited by the written employment agreement executed between you and LRN;

2. You do not make any use of LRN's trade secrets and/or confidential proprietary information as defined by the Uniform Trade Secrets Act, including its client lists and information on client transactions, contemplated transactions, marketing and pricing information;

3. You immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit its clients, on behalf of yourself or on behalf of any other business entity;

4. You immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit LRN's employees to leave the company;

5. You immediately return to LRN all originals and/or copies of any of its documents, records, computer files, databases, client lists, information or other materials of a confidential or proprietary nature presently in your possession or under your control;

6. You immediately cease making representations about LRN's business operations, its personnel or employment policies, its client relationships, its client contracts, its client pricing information, its marketing plans and

strategies, its projected or historical revenues, its employee turnover, its employee compensation or benefit information, and any of its confidential business practices;

7.  You immediately cease making any negative, untruthful or disparaging remarks about LRN, its business practices, or its treatment of you as an employee or its treatment of any other current or former employee; and

8.  You immediately cease any interference or attempted interference with any business relationship between LRN and any of its clients or employees.

A copy of the Affidavit is attached hereto as Exhibit "B." If you sign the attached Affidavit, and if LRN receives no further credible information that you have violated any of the promises contained in the Affidavit, LRN will refrain from filing a lawsuit against you and the others acting in concert with you.

On the other hand, if you refuse to sign the attached Affidavit, LRN will have no choice but to conclude that you intend to use and disclose LRN's trade secrets and/or confidential proprietary information for your own benefit and/or the benefit of your new employer. As a result, LRN will then be forced to consider exercising its legal rights to protect its interests, which may include seeking a Temporary Restraining Order, and/or filing a Civil Complaint for Injunctive Relief and/or Monetary Damages.

**LRN requests that you return the attached Affidavit, signed and notarized, no later than 5:00 p.m. Pacific Time on Monday, July 18, 2005.** The signed Affidavit may be sent to my attention, as follows: Jon D. Meer, DLA Piper Rudnick Gray Cary US LLP, 1999 Avenue of the Stars, Fourth Floor, Los Angeles, California 90067, facsimile number (310) 595-3304, telephone number (310) 595-3004. Alternatively, the signed Affidavit may be sent to one of my Partners in the District of Columbia, as follows: Roxane Marenberg, DLA Piper Rudnick Gray Cary US LLP, 1200 Nineteenth Street, N.W., Seventh Floor, Washington, DC 20036, facsimile number (202) 223-2085, telephone number (202) 861-3419.

If there is anything that you or your counsel would like to discuss prior to July 18, 2005, please call me at (310) 595-3004, or my Partner, Roxane Marenberg, at (202) 861-3419. If you prefer, you may also directly contact Julie Molleston at LRN, at telephone number (310) 209-5400. All of us are amenable to discuss and consider any reasonable means to avoid litigation against you and your current employer.

Ms. Julie K. Moriarty
July 12, 2005
Page 9

On behalf of LRN, we hope we will be able to resolve this matter on a mutually agreeable and professional basis, without the need for litigation. We look forward to receiving your response.

Very truly yours,

**DLA PIPER RUDNICK GRAY CARY US LLP**

Jon D. Meer

JDM/il
Enclosures

cc:   James M. Brennen, Esq.
      (Legal Counsel & Chief Ethics Officer, Midi Corp.; via overnight mail)
      David J. Shapiro, Esq.
      Julie Molleston

Ms. Julie K. Moriarty
July 12, 2005
Page 10

bcc:    Roxane S. Marenberg, Esq.

## AFFIDAVIT

| | | |
|---|---|---|
| State of Virginia, | ) | |
| | ) | ss. |
| United States of America | ) | |

I, JULIE M. MORIARTY, hereby swear and attest as follows:

1.    I have personal knowledge of the facts contained in this Affidavit and if called as a witness, could and would testify as to their accuracy.

2.    I entered into a written employment agreement with LRN, The Legal Knowledge Company, Inc. ("LRN"), which prohibits unfair competition with LRN by using or disclosing its trade secrets and/or confidential proprietary information while working for a competitor, and more generally, defines and prohibits use of LRN's "Confidential Information," in any capacity. A copy of this agreement is attached hereto as Exhibit "A." I hereby agree to follow each of the terms contained in this employment agreement and agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, if I violate this written employment agreement in the future.

3.    I also hereby agree to follow each of the terms of the Uniform Trade Secrets Act, as that statute applies to any trade secrets acquired while employed at LRN and agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, if I violate this written employment agreement in the future.

4.    More specifically, I further hereby agree to:

(a)    cease and desist from all conduct or activities that violate my agreement not to use or disclose LRN's "Confidential Information," as defined and prohibited by the written employment agreement executed between you and LRN;

(b)    Not to make any use of LRN's trade secrets and/or confidential proprietary information as defined by the Uniform Trade Secrets Act, including its client lists and information on client transactions, contemplated transactions, marketing and pricing information;

(c)    Immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit its clients, on behalf of myself or on behalf of any other business entity;

(d)    Immediately stop using LRN's trade secrets and/or confidential proprietary information to solicit LRN's employees to leave the company;

(e)    Immediately return to LRN all originals and/or copies of any of its documents, records, computer files, databases, client lists, information or other materials of a confidential or proprietary nature presently in my possession or under my control;

(f)    Immediately cease making representations about LRN's business operations, its personnel or employment policies, its client relationships, its client contracts, its client pricing information, its marketing plans and strategies, its projected or historical revenues, its employee turnover, its employee compensation or benefit information, and any of its confidential business practices;

(g)    Immediately cease making any negative, untruthful or disparaging remarks about LRN, its business practices, or its treatment of me as an employee or its treatment of any other current or former employee; and

(h)    Immediately cease any interference or attempted interference with any business relationship between LRN and any of its clients or employees.

I further agree that LRN shall be entitled to injunctive relief, as well as any monetary damages subject to the applicable burden of proof, without any objection or opposition from me, for any subsequent violation of the promises and covenants contained in this Affidavit.

I declare under penalty of perjury under the laws of the State of Virginia and the United States of America that the foregoing is true and correct.

Executed this ___ day of July, 2005, at Manassas, Virginia.


_____

JULIE M. MORIARTY


Notary Public:


By:_____


3

# EXHIBIT H

July 18, 2005

<u>VIA FEDERAL EXPRESS</u>
Jon D. Meer
DLA Piper Rudnick Gray Cary US LLP
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6002

Dear Mr. Meer:

I am responding to your letter of July 13, 2005.

I have consulted with legal counsel both before and after receiving your letter in order to understand my obligations under applicable law and under my agreements with LRN.

I have complied and intend to continue to comply with all obligations under applicable law and under my agreements with LRN.

Sincerely,

Merrill Philips

# EXHIBIT I

Julie K. Moriarty
8122 King Arthur's Court
Manassas, Virginia  20112

July 18, 2005

<u>VIA FEDERAL EXPRESS</u>

Jon D. Meer, Esq.
DLA Piper Rudnick Gray Cary US LLP
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California  90067-6022

     Re:   <u>July 13 Letter</u>

Dear Mr. Meer:

I am responding to your letter of July 13, 2005.  I consulted with legal counsel both before and after receiving your letter in order to understand my obligations under the law and under my agreements with LRN.  I have complied and intend to continue to comply with all obligations that statutory or common law may impose upon me.

Sincerely,

Julie K. Moriarty

EXHIBIT J

**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com

JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004  F 310.595.3304

July 20, 2005

**VIA OVERNIGHT DELIVERY**

Ms. A. Merrill Phillips
3303 Water Street, N.W., Apt. 3N
Washington, D.C. 20007

> Re:  **Non-Competition and Trade Secret Obligations**
> **Involving LRN, The Legal Knowledge Company, Inc.**

Dear Ms. Philips:

I am writing in response to your letter sent to me on July 18, 2005. Although your letter indicates that you have contacted legal counsel, it does not provide any information about the lawyer or law firm that you have retained. I am, therefore, responding directly to you. If you would prefer that I speak directly with your outside counsel, please furnish his or her contact information to me.

In your letter, you state "I have complied and intend to continue to comply with all obligations under applicable law and under my agreements with LRN." However, this statement has not been made under oath, and provides no response to the specific contractual and statutory obligations outlined in my letter dated July 13, 2005. Thus, it is acceptable.

Unless we receive the affidavit signed by you as enclosed in my prior letter, we will have no choice but to consider initiating litigation. Due to the urgency of these issues, and LRN's commitment to take all appropriate measures to protect its rights, I would appreciate a response by the close of business on Friday, July 22, 2005.

Very truly yours,

**DLA PIPER RUDNICK GRAY CARY US LLP**

Jon D. Meer

JDM/il
cc:    Roxane Marenberg, Esq. (*via facsimile*)

~LOSA1:139727.v1
307008-10
**Serving clients globally**

Ms. A. Merrill Phillips
July 20, 2005
Page 2

bcc:    David Shapiro, Esq.
        Ms. Julie Molleston

# EXHIBIT K

**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com

JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004  F 310.595.3304

July 20, 2005

**VIA OVERNIGHT DELIVERY**

Ms. Julie K. Moriarty
8122 King Arthurs Court
Manassas, VA  20112

    Re:    **Non-Competition and Trade Secret Obligations
           Involving LRN, The Legal Knowledge Company, Inc.**

Dear Ms. Moriarty:

       I am writing in response to your letter sent to me on July 18, 2005.  Although your letter indicates that you have contacted legal counsel, it does not provide any information about the lawyer or law firm that you have retained.  I am, therefore, responding directly to you.  If you would prefer that I speak directly with your outside counsel, please furnish his or her contact information to me.

       In your letter, you state "I have complied and intend to continue to comply with all obligations that statutory or common law may impose upon me."  However, this statement has not been made under oath, and provides no response to the specific contractual and statutory obligations outlined in my letter dated July 13, 2005.  Thus, it is unacceptable.

       Unless we receive the affidavit signed by you as enclosed in my prior letter, we will have no choice but to consider initiating litigation.  Due to the urgency of these issues, and LRN's commitment to take all appropriate measures to protect its rights, I would appreciate a response by the close of business on Friday, July 22, 2005.

                  Very truly yours,

                  **DLA PIPER RUDNICK GRAY CARY US LLP**

                  Jon D. Meer

JDM/il
cc:    Roxane Marenberg, Esq. (*via facsimile*)

~LOSA1:139726.v1
307008-10
**Serving clients globally**

Ms. Julie K. Moriarty
July 20, 2005
Page 2


bcc:    David Shapiro, Esq.
        Ms. Julie Molleston

EXHIBIT L


**PIPER RUDNICK**
**GRAY CARY**

**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com


JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004   F 310.595.3304

July 25, 2005

**VIA OVERNIGHT DELIVERY**

Ms. A. Merrill Phillips
3303 Water Street, N.W., Apt. 3N
Washington, D.C.  20007

> Re:   **Non-Competition and Trade Secret Obligations**
>         **Involving LRN, The Legal Knowledge Company, Inc.**

Dear Ms. Philips:

I am writing to provide you with a final opportunity to sign the Affidavit previously sent to you on behalf of your former employer, LRN, The Legal Knowledge Company, Inc. ("LRN"), on July 13, 2005.  Your prior correspondence regarding your continuing obligations to LRN does not provide adequate assurance that you are in compliance with your contractual and statutory obligations with respect to LRN's trade secrets and confidential proprietary information.  If you contend that you are in compliance with these obligations, LRN must insist that you sign the Affidavit previously sent to you.

As previously stated, LRN hopes to avoid litigation on these issues.  Toward that end, LRN is providing you with a final opportunity to sign the Affidavit and send it to me by the close of business on Wednesday, July 27, 2005.  If I do not receive the signed Affidavit by this time, LRN will have no choice but to conclude that you are uninterested in attempting to resolve these issues before LRN is forced to consider initiating legal action to protect its rights.

I look forward to hearing from you, or your legal counsel, prior to the deadline stated above.

Very truly yours,

**DLA PIPER RUDNICK GRAY CARY US LLP**

Jon D. Meer

JDM/il
cc:   Roxane Marenberg, Esq. (*via facsimile*)

LOSA1:143417.v1
J07008-10
**Serving clients globally**

# EXHIBIT M



**DLA Piper Rudnick Gray Cary US LLP**
1999 Avenue of the Stars, Fourth Floor
Los Angeles, California 90067-6022
T 310.595.3000
F 310.595.3300
W www.dlapiper.com

JON D. MEER
jon.meer@dlapiper.com
T 310.595.3004  F 310.595.3304

July 25, 2005

**VIA OVERNIGHT DELIVERY**

Ms. Julie K. Moriarty
8122 King Arthurs Court
Manassas, VA  20112

Re:     **Non-Competition and Trade Secret Obligations
Involving LRN, The Legal Knowledge Company, Inc.**

Dear Ms. Moriarty:

I am writing to provide you with a final opportunity to sign the Affidavit previously sent to you on behalf of your former employer, LRN, The Legal Knowledge Company, Inc. ("LRN"), on July 13, 2005.  Your prior correspondence regarding your continuing obligations to LRN does not provide adequate assurance that you are in compliance with your contractual and statutory obligations with respect to LRN's trade secrets and confidential proprietary information.  If you contend that you are in compliance with these obligations, LRN must insist that you sign the Affidavit previously sent to you.

As previously stated, LRN hopes to avoid litigation on these issues.  Toward that end, LRN is providing you with a final opportunity to sign the Affidavit and send it to me by the close of business on Wednesday, July 27, 2005.  If I do not receive the signed Affidavit by this time, LRN will have no choice to conclude that you are uninterested in attempting to resolve these issues before LRN is forced to consider initiating legal action to protect its rights.

I look forward to hearing from you, or your legal counsel, prior to the deadline stated above.

Very truly yours,

**DLA PIPER RUDNICK GRAY CARY US LLP**

Jon D. Meer

JDM/il
cc:     Roxane Marenberg, Esq. (*via facsimile*)

~LOSA1:143414.v1
307008-10
Serving clients globally

# EXHIBIT N

Sachnoff & Weaver, Ltd.                **Jeffrey L. London**
10 South Wacker Drive                   Attorney at Law
Chicago, Illinois 60606-7507            t 312.207.3878
t 312.207.1000  f 312.207.6400          jlondon@sachnoff.com
www.sachnoff.com

# Sachnoff&Weaver 🕷

July 28, 2005

## VIA OVERNIGHT DELIVERY

Jon D. Meer
DLA Piper Rudnick Gray Cary US LLP
1999 Avenue of the Stars, Fourth Floor
Los Angeles, CA 90067-6022

Re:    *LRN*

Dear Jon:

As a follow-up to our telephone conversation last week, and on behalf of Midi, Inc., Merrill Philips and Julie Moriarty, I wanted to confirm that Merrill and Julie, as a condition of their employment with Midi, Inc., agreed in writing that, during the period of their employment with Midi, they would not: "improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have any obligation of confidentiality, and I will not bring on to the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person."

Further, both Merrill and Julie have also been directed in writing that they are to "treat all confidential information that [they] obtained during the course of [their] employment with LRN as confidential and that [they] do not disclose any such information to any employee of, consultant to, or individual affiliated with, Midi."

Merrill and Julie have reviewed this letter to you, understand their obligations and are acting in accordance with such obligations.

We trust that this letter is sufficient to allay any concerns that LRN may have with respect to the conduct of Merrill, Julie or Midi. If, at any time, LRN has a factual basis to support its position that either Merrill or Julie are in violation of this non-disclosure provision, we encourage LRN to provide us with some substantive support for such a basis and Midi will promptly investigate it. Rest assured, however, that Midi, Merrill and Julie

Jon D. Meer
July 28, 2005
Page 2

Sachnoff&Weaver ⓦ

will seek all appropriate remedies, including sanctions, if applicable, should LRN file any cause of action against any or all of them based upon unsupported and unsubstantiated allegations.

Very truly yours,

Jeffrey L. London
for SACHNOFF & WEAVER, LTD.

JLL/cap

209707/0000/768398/Version #:.1