IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LRN CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>A. MERRILL PHILIPS, )<br>)<br>Defendant. ) | Case No. 1:05CV01652<br>Judge: Emmet G. Sullivan |

**BRIEF IN SUPPORT**
**OF MOTION TO DISMISS**

The defendant, A. Merrill Philips ("Philips"), pursuant to Rule 12(b)(6), respectfully submits the following brief in support of her motion to dismiss.

**I**

**Statement of the Nature of the Matter Before the Court**

This is a case brought by LRN Corporation ("LRN") against its former employee, Philips, seeking injunctive relief for purported misappropriation of trade secrets and breach of contract.[1] In this suit, the plaintiff, LRN Corporation ("LRN"), is seeking to use this Court as a device to force its former employee, Philips, to sign an affidavit and to make representations and promises she is not required to make. Under the guise of trade secrets and breach of contract claims, LRN asks this Court to force Philips to refrain from doing actions that LRN does not allege she is doing. Incredibly, LRN concedes that it has no evidence to support its claims. It relies solely upon unfounded innuendo and baseless fears to try to create a trade secrets case

---

[1] The complaint appears to contain three counts (two of which are labeled "Count III"), the first two appearing to be claims for trade secret misappropriation, and the third appearing to be a claim for breach of contract.

where none exists, in an attempt to harm the reputation of one of its former employees. LRN seeks to use the powerful and potentially devastating remedy of an injunction to injure Philips, not to avoid any injury to itself. This brief will demonstrate that, without question, LRN's complaint does not state a claim upon which relief can be granted.

There are several fundamental and fatal flaws in the LRN's complaint. First, the complaint is devoid of any factual substance. Indeed, read carefully, LRN claims that Philips "may" violate its trade secrets or that its purported trade secrets "have been or will be" misappropriated. Obviously, this is not sufficient to justify the granting of relief.

Second, and related to the above, LRN's complaint is not truly that Philips has violated any legal obligation to LRN. Rather, the basis for LRN's claims is Philips' refusal to sign an affidavit prepared by LRN's counsel. However, LRN presents no allegations that establish that Philips was obliged to sign such an affidavit. Simply put, the basis for LRN's claims is that Philips would not succumb to LRN's overreaching. This, too, is not a basis for any relief.

## II

## **Facts**

The relevant facts, as alleged by LRN, are as follows.[2] LRN is a company that creates and markets products addressing corporate governance, ethics and compliance issues for businesses. (Complaint ¶ 7). Philips was an employee of LRN. (Complaint ¶ 14). Upon the inception of her employment with LRN in 1999, Philips signed a Non-Disclosure Agreement, which agreement prohibited her from revealing certain confidential information belonging to LRN. (Complaint ¶¶ 15, 16). At the same time, Philips signed a second Non-Disclosure

---

[2] LRN has many of its facts wrong. However, they will be presumed accurate for the purposes of his motion.

Agreement, which restricted Philips' ability to disclose LRN's confidential information and trade secrets. (Complaint ¶¶ 18, 19). The Non-Disclosure Agreements were governed by California law. (Complaint ¶ 21).

Philips began her employment with LRN as Regional Director, Customer Relations. In that role, she performed duties forging client relationships and supporting LRN's sales staff, maintaining daily sales activity calls to meet sales targets for new and existing customers, executing prospecting techniques for scheduling and developing and communicating with clients about current LRN products. (Complaint ¶¶ 22-28).

Philips resigned her employment with LRN effective February 4, 2005. (Complaint ¶ 29). She did not disclose, at that time, that she was going to work for Midi, a competitor of LRN. (Complaint ¶ 29). While employed by LRN, Philips received confidential information and trade secrets belonging to LRN. (Complaint ¶ 33). Midi is a direct competitor of LRN, and Philips performed virtually the same job duties for Midi that she performed for LRN. (Complaint ¶¶ 34-38).

On July 13, 2005, LRN's counsel sent Philips a letter, demanding that Philips execute an affidavit stating, inter alia, that she would cease violating the Non-Disclosure Agreements, stop violating LRN's trade secrets rights, return all documents belonging to LRN, and cease making representations about LRN and its business, employment policies, client relationships and the like. The affidavit also purported to require Philips to cease making any disparaging comments about LRN and cease interfering with LRN and its employee and client relationships. (Complaint ¶ 40). The letter set forth no facts that suggested that Philips had done any of the acts that she was to "cease" and "stop."

On July 18, 2005, Philips responded to LRN's counsel's letter, advising him that she was aware of her obligations under the Non-Disclosure Agreements and the law, and that she was in compliance with her legal and contractual obligations, and intended to continue to comply with such obligations. (Complaint ¶ 41; LRN's Memo. in Support of Motion for Preliminary Inj., Ex. I). Despite this assurance, on July 20 and July 25, 2005, LRN's counsel sent additional letters to Philips, again demanding that she sign the affidavit. (Complaint ¶¶ 42, 43).[3] Thereafter, on July 28, 2005, Philips' counsel sent a letter to LRN's counsel, again affirming that Philips was in compliance with her legal and contractual obligations, and requesting that LRN provide any facts it might have to the contrary. (Complaint ¶ 44; LRN's Memo. in Support of Motion for Preliminary Inj., Ex. N). Philips continued to refuse to sign the affidavit, so LRN filed this suit. (Complaint ¶¶ 45, 46).

## III

## Argument

### A

### Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of an action against a party when the complaint fails to state a claim on which relief can be granted. The purpose of a motion to dismiss under Rule 12(b)(6) is to "[test] the sufficiency of a complaint ..." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling on such a motion, the allegations of the complaint must be construed in favor of the pleader and the facts well-plead must be assumed to be true. See Macharia v. United States, 334 F.3d 61, 67 (D.C. Cir. 2003).

---

[3] LRN's counsel continued to demand that Philips sign the affidavit despite his knowledge that Philips believed that it was false, given that she had not violated her contractual or legal obligations.

However, the Court will accept neither "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Copr., 16 F.3d 1271, 1276 (D.C. Cir. 1994). A Rule 12(b)(6) motion will be granted where it appears certain that the plaintiff can prove no set of facts that would support its claim and would entitle it to relief. See Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994).

B

**LRN Fails to State a Claim for Misappropriation of Trade Secrets**

LRN alleges not a single fact that supports a claim that Philips has misappropriated its trade secrets. Under the California Uniform Trade Secrets Act (CUTSA), a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. Cal. Civ. Code § 3426.1; Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665, 3 Cal. Rptr. 3d 279, 283 (2003). "Improper means" includes, for example, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy. Cal. Civ. Code § 3426.1(a). Thus, in order to state a claim, a plaintiff must demonstrate both that a trade secret exists and that the defendant's behavior constituted a misappropriation. In other words, the plaintiff must establish that the defendant actually improperly "used" the trade secret. Id. at 1665; See also Ernest Paper Products, Inc. v. Mobil Chem. Co., Inc., 1997 U.S. Dist. LEXIS 21817, *13, 15 (C.D. Ca. 1997).

LRN does not allege, nor can it allege, any <u>facts</u> to the effect that Philips has improperly used any of its trade secrets.[4] It does not identify a single trade secret that Philips has used or threatened to use or disclose. Cut to the core, LRN's allegations are that (a) LRN has trade secrets that it disclosed to Philips while she was employed by LRN, (b) Philips left LRN to work for a competitor, (c) Philips has denied misappropriating LRN's trade secrets, and (d) Philips refused to sign an affidavit stating or implying that she had misappropriated LRN's trade secrets and confidential information, and imposing upon her obligations beyond those set forth in the Non-Disclosure Agreements.

The only conceivable theory upon which LRN must rely is the "inevitable disclosure doctrine." This legal theory has been expressly and repeatedly rejected by California courts. <u>Whyte v. Schlage Lock Co.</u>, 101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002). LRN posits that because Philips was formerly employed by LRN and now works for a competitor, she necessarily must be using or threatening to use its trade secrets. Under such a theory, every employee who acquired any arguably proprietary information during the course of employment could be deemed a "threat."

The inevitable disclosure doctrine is not recognized under the law of California. <u>See</u> <u>Whyte, supra</u>. In <u>Whyte</u>, Whyte was Schlage's vice-president of sales. Whyte signed an agreement restricting his use of Schlage's confidential and proprietary information. In his capacity as vice president of sales, Whyte participated in the negotiation of an arrangement with

---

[4] That LRN has no such facts is apparent from paragraph 61 of its complaint, where it alleges the legal conclusion that "Philips has used or disclosed, or will use and disclose, LRN's trade secret information . . . ." In so alleging, LRN does not allege which trade secrets Philips has purportedly used or disclosed, or threatened to use or disclose, because it cannot do so. Indeed, when asked to identify just what it is that Philips has done, LRN did not respond. It filed this lawsuit.

Home Depot to provide greater shelf space to Schlage's products, to the detriment of Schlage's competitor, Kwikset.

Kwikset then offered Whyte a job. Whyte accepted the position with Kwikset, but continued talks with Home Depot on behalf of Schlage before announcing his resignation. When Whyte assumed virtually identical duties for Kwikset, Schlage sought injunctive relief. In seeking to enjoin Whyte from actual or threatened misappropriation of its trade secrets, Schlage presented evidence that Whyte had access to its trade secrets; vowed to get even with its president; concealed his planned departure from Schlage; renounced his confidentiality agreement; lied about destroying Schlage's confidential information; retained a copy of Schlage's agreement with Home Depot; and accepted a position with a competitor, with identical duties. The trial court found under these acts (which were disputed), that Whyte should not be enjoined.

On appeal, Schlage relied, in part, upon the inevitable disclosure doctrine, under which "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." Whyte, 101 Cal. App. 4th at 1458, 125 Cal Rptr. 2d at 290 (citing PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995)). In affirming the trial court's refusal to enter an injunction, the California Court of Appeals rejected the doctrine under California law, pointing out that under California law, covenants not to compete are generally forbidden. See id. at 1462, 125 Cal. Rptr. at 292; Cal. Bus. & Prof. Code § 16600. Given the policy against enforcing noncompetition agreements, the Court found that applying the inevitable disclosure doctrine would amount to an after-the-fact amendment to the parties' employment agreement, imposing a *de facto* covenant not to compete.

7

LRN presents a case far less persuasive than Schlage did. Philips did not renounce her confidentiality agreement. In fact, she assured LRN twice that she had and would continue to honor it. Philips has never lied about her possession of LRN's confidential information. Indeed, despite LRN's insistence that she do so by signing the false affidavit, Philips affirmatively refused to lie. And Philips assured LRN that she retained no documents or contracts belonging to LRN. If Schlage was not entitled to injunctive relief in Whyte, LRN most assuredly is not entitled to such relief here.

Similarly, in Bayer Corp. v. Roche Molecular Sys., Inc., 72 F. Supp. 2d 1111 (N.D. Cal. 1999), a drug company, which had formerly employed a marketing manager, was not entitled to a preliminary injunction preventing the new employer's misappropriation of trade secrets absent a showing of the likelihood that it would be able to prove actual or threatened use or disclosure, as required to prevail under California law. In light of California's policy favoring employee mobility, a mere theory of inevitable disclosure, without evidence of the manager's intent disclose secrets, was not sufficient. See id. As the Court stated in Bayer:

> This motion for a preliminary injunction presents a conflict between two strong public policies of California-the policy favoring employee mobility free of encumbering restriction and the policy favoring protection of genuine trade secrets. On the present record, the Court concludes that employee mobility must prevail and denies plaintiff's motion to prohibit a former employee from pursuing his trade at a competitor. The theory of "inevitable disclosure" is not the law in California and, at trial, plaintiff will have to demonstrate actual use or disclosure, or actual threat thereof. For the purposes of a preliminary injunction, under California law, the theory of inevitable disclosure does not supply the proof needed to establish a probability of success on the merits nor does it suffice to raise serious questions about actual use or threat.

Id. at 1120.

This is precisely the case before the Court in the case at bar. LRN has not alleged a single fact to the effect that Philips has misappropriated its trade secrets or other confidential information. Its complaint depends solely upon Philips' refusal to agree to additional restrictions and refusal to sign LRN's affidavit that falsely states that Philips misappropriated its trade secrets. Simply put, LRN is requesting this Court to infer misappropriation solely on the basis that Philips is working for a competitor. This is not permitted under California law.

Accordingly, Counts I and the first Count III must be dismissed.

### C

### LRN Fails to State a Claim for Breach of Contract

As with its other claims, LRN fails to allege a single fact that supports its claim for breach of contract. To state a claim for breach of contract under California law, a plaintiff must allege (a) the existence of a contract, (b) the plaintiff's performance or excuse for nonperformance, (c) the defendant's breach, and (d) resulting damages to the plaintiff. See Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388, 1272 Cal. Rptr. 387, 395 (1990).

The sole factual allegation in the complaint with respect to a failure by Philips is the allegation that she refused to sign an affidavit. LRN does not allege, nor can it allege, that Philips was contractually or otherwise obligated to sign its affidavit. Seeking to avoid this result, LRN alleges only a legal conclusion -- that Philips breached the Non-Disclosure Agreements by "misappropriating, or threatening to misappropriate" unidentified "confidential proprietary information." (Complaint ¶ 66). Such an allegation, in the absence of facts, cannot sustain a claim for breach of contract.

Accordingly, the second Count III must be dismissed.

IV

**Conclusion**

LRN has failed to allege sufficient facts to support any claim for trade secrets misappropriation or breach of contract. Setting aside LRN's legal conclusions, the only thing LRN alleges that Philips has done to offend it is refusing to sign an affidavit that she was not obligated to sign. On its face, the complaint fails to state any cause of action, and is a transparent attempt to force Philips to falsely state that she did something wrong. This misuse of the judicial system is abhorrent, abusive and unethical. The Complaint must be dismissed, with prejudice, allowing Philips to pursue her counterclaim for attorneys' fees incurred as a result of this bad faith claim.

                                                       A. MERRILL PHILIPS
                                                       By Counsel

**NEWBERG & WINTERS LLP**
8300 Boone Boulevard
Suite 500
Vienna, Virginia  22182
(703) 714-9530
Facsimile (703) 991-4516

By: _/s/ Brad R. Newberg_
    Brad R. Newberg (D.C. Bar No. 467898)
    Christopher Winters (D.C. Bar No. 461454)
    Counsel for Philips

Of Counsel:

Rodney G. Leffler
Timothy B. Hyland
LEFFLER & HYLAND
A Professional Corporation
4163 Chain Bridge Road
Fairfax, Virginia 22030-4102
(703) 293-9300
Facsimile (703) 293-9301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Brief in Support of Motion to Dismiss was hand delivered this 9th day of September, 2005, to:

>Michelle L. Schaefer, Esquire
>Roxanne Sokolove Marenberg, Esquire
>DLA PIPER RUDNICK GRAY CARY US LLP
>1200 19th Street, N.W.
>Washington, D.C. 20036

_____
Brad R. Newberg