IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LRN CORPORATION,<br><br>PLAINTIFF/<br>COUNTERCLAIM<br>DEFENDANT<br><br>v.<br><br>A. MERRILL PHILIPS,<br><br>DEFENDANT/<br>COUNTERCLAIM<br>PLAINTIFF | CASE NO. 1:05cv01652<br>Judge: Emmet G. Sullivan |

## LRN CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff LRN Corporation ("LRN" or "Plaintiff"), by counsel, respectfully opposes Defendant A. Merrill Philips' ("Philips" or "Defendant") Motion to Dismiss. Philips' Motion is based upon (a) an erroneous interpretation of the California Uniform Trade Secrets Act, ("CUTSA"), Cal. Civ. Code § 3426.2 *et seq.*; (b) a misunderstanding of the theory upon which LRN seeks injunctive relief for the actual or threatened misappropriation of trade secrets; and (c) failure to recognize that LRN's breach of contract claim is based on Philips' breach of her non-disclosure agreements with LRN.

### I.     BACKGROUND

Philips, a former Regional Director of Customer Relations at LRN, signed two non-disclosure agreements at the inception of her employment with LRN by which she agreed not to improperly use LRN's confidential and proprietary information. By signing these agreements, Philips acknowledged that her employment relationship with LRN gave her access to and possession of LRN's trade secrets and other confidential information. *See* Complaint ¶¶ 14-19. These trade secrets included LRN's client lists, client preferences, client pricing information,

business plans and strategies, client contracts, past and future business opportunities, and other confidential and proprietary programs, reports, contracts and proposals. *See* Complaint ¶¶ 22-28, 52. Indeed, as Regional Director of Customer Relations, Philips had access to LRN's highly confidential and sensitive information in order to perform her job. *See* Complaint ¶ 22-28.

Philips resigned from LRN in February 2005 but did not inform LRN that she was going to work for a direct competitor, Midi. *See* Complaint ¶¶ 29, 34. LRN never received confirmation that Philips had returned all of LRN's trade secrets and other confidential information in her possession after she departed from LRN. *See* Complaint ¶ 33. Moreover, Philips had refused to sign an Intellectual Property and Confidentiality Employee Contract agreeing not to improperly use LRN's trade secrets and confidential information. *See* Complaint, ¶¶ 30-32.[1] When LRN discovered that Philips was working for Midi, its direct competitor, it immediately sent Philips a cease and desist letter requesting an affirmation that she not use LRN's trade secrets and confidential proprietary information. *See* Complaint ¶¶ 39-40. LRN sought these assurances from Philips on four separate occasions to no avail. Philips consistently refused to provide LRN with any sworn assurances. *See* Complaint ¶¶ 39-46.

Philips' knowledge of LRN's trade secrets, her current employment with Midi, her consistent refusal to provide LRN with adequate assurances, her failure to acknowledge return of LRN's property despite numerous requests, the injury that LRN will suffer if Philips were to unfairly make use of LRN's trade secrets, and the competitive advantage that Philips and Midi stand to improperly gain through the use of LRN's trade secrets, support LRN's claims for injunctive relief based on actual or threatened misappropriation of trade secrets. Philips is in a position where she has, or threatens to, disclose or use LRN's trade secrets and confidential

---

[1] The Intellectual Property and Confidentiality Employer Confirmation provided "You have agreed to maintain all of LRN ... confidential information in absolute secrecy. You should not take any materials containing confidential information with you. You may not directly or indirectly share or allow access to this information. *See* Complaint ¶¶ 29-32.

information without express or implied consent by LRN, in contravention of her duties under the CUTSA and the non-disclosure agreements she entered into with LRN.

## II.   STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b), "the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true. *Id.* at 656 (*citing Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969)). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (*citing* Fed. R. Civ. P. 8.). A defendant's Rule 12(b)(6) motion should be denied unless it appears "beyond doubt" that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 655 (E.D. Va. 2002) (*citing De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III.   ARGUMENT

### A.   A Valid Cause Of Action For Injunctive Relief Based On The Misappropriation Of LRN's Trade Secrets Has Been Pled.

Philips claims LRN has failed to allege that Philips actually improperly used LRN's trade secrets and, therefore, is not entitled to injunctive relief. *See* Philips' Brief In Support of Motion to Dismiss (hereafter "Motion to Dismiss p. __") pp. 5-6.[2] The actual improper use of a trade secret is not a prerequisite to alleging a viable cause of action under the CUTSA. Rather, under the CUTSA, "actual or threatened misappropriation may be enjoined." Misappropriation is defined as "disclosure or use of a trade secret of another without express or implied consent by a

---

[2] Philips' reliance on *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 3 Cal Rptr. 3d 279 (2003) is misplaced. The court addressed the burden of proof during trial and proposed jury instructions on the alleged improper use of a trade secret at the outset and during trial. The misappropriation claim was based upon the defendant's alleged use of a trade secret in connection with the development of a new in-flight aircraft refueling system. The defendant denied use of plaintiff's trade secret claiming it "reversed engineered and independently developed the device."

3

person who ... at the time of disclosure knew or had reason to know that his or her knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or ... derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. *See* Cal. Civ. Code § 3426.1.

In determining whether threatened misappropriation exists, courts look to the suspicious or uncooperative behavior on the departing employee's part. When an employee deceives his former employer about having taken a job with a competitor or the nature and scope of her new employment, an injunction may be triggered. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 12720-71 (7th Cir. 1995). The fact that an employee retains information acquired from his former employer also gives rise to the inference of intent to use. *See Surgidev Corporation v. Eye Technology, Inc.*, 648 F.Supp. 661, 695 (D. Minn. 1986) (actual or threatened misappropriation requires proof that there is an intention on the part of the defendants to use or disclose the putative trade secrets) (*applying* Minnesota and California law). It is also well settled that an injunction may issue barring unauthorized disclosure and use of trade secrets before such use or disclosure occurs. At the preliminary stage of proceedings, the facts may warrant a conclusion of threat of disclosure or wrongful conduct without an enumeration of the specific secrets. *See Allis Chambers Manufacturing Co. v. Continental Aviation, et al.*, 255 F. Supp. 645, 654 (E.D. Mich. 1966) (court enjoined use of trade secrets by issuing preliminary injunction).

The ruling in *Lejeune v. Coin Acceptors, Inc.*, 381 Md. 288, 849 A.2d 451 (Md. 2004) is instructive in defining "threatened misappropriation."[3] In *Lejeune*, the court found that the evidence established a former employee's threatened misappropriation. The employee announced he was going to work for a competitor, told his former employer he would be in a

4

"unique" position with the competitor thereby suggesting he might use the employer's confidential information in his new employment, and retained the employer's confidential information. *See Lejeune*, 381 Md. at 315, 849 A.2d at 467; *see also Ackerman v. Kimball International, Inc.*, 652 N.E.2d 507, 510-511 (Ind. 1995) (upholding the trial court's finding that the defendant's "pre-departure harvesting" of the plaintiff's "proprietary information" suggested a threat of misappropriation.).

Here, the evidence of Philips' intent is far more compelling. Philips <u>never</u> disclosed that she was going to work for a competitor. *See* Complaint ¶ 29. She refused to sign an Intellectual Property and Confidentiality Employee Confirmation. *See* Complaint ¶¶ 29-32. Moreover, when LRN sought specific assurances from Philips that she was in compliance with her non-disclosure agreement, on four separate occasions after learning that she was working for a competitor, Midi, Philips refused to provide them. *See* Complaint ¶¶ 39-46. Philips refused to acknowledge she returned LRN's property even though she was required to return all of it after her departure, and even though LRN sought confirmation of the return of such property on numerous occasions. *See* Complaint ¶ 33. As was the case in *Lejeune*, this evidence suggests that Philips has, or threatens to, misappropriate LRN's trade secrets in her new employment at Midi.

### B. The Doctrine Of Inevitable Disclosure is Inapplicable and Does Not Warrant Dismissal Of This Suit.

Philips' assumption regarding LRN's legal theory and her reliance on *Whyte v. Schlage Lock Company*, 101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002) and *Bayer Corp. v. Roche Molecular Systems, Inc.*, 72 F. Supp. 2d 1111 (N.D. Cal. 1999) is misplaced and does not support dismissal. In both *Whyte* and *Bayer*, former employers unsuccessfully attempted to enjoin the

---

[3] The Maryland and California Trade Secrets Acts are both based on the Uniform Trade Secrets Act. Both statutes allow for the issuance of injunctions to prevent actual or threatened misappropriation. *See* Md. Code Ann. § 11-1202 and Cal. Civ. Code § 3426.2.

misappropriation of trade secret information under the doctrine of inevitable disclosure. The *Whyte* court described the doctrine as follows, "The doctrine of inevitable disclosure permits a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets." *Whyte*, 101 Cal. App. 4th at 1446. The courts' refusal in *Whyte* and *Bayer* to enter preliminary injunctions was based on the absence of any evidentiary support for the alleged misappropriation – short of inevitable disclosure.[4]

In *Bayer*, the court denied injunctive relief because it found that the evidence did not support the former employer Bayer's allegations of actual or threatened use or disclosure. The court stated: "In brief, the Court finds that Bayer's specific evidence of actual use fails, either because the information was not really private or because it was already known by [competitor] Roche." *Bayer*, 72 F. Supp. 2d at 1117.[5]

Importantly, the *Whyte* court stated: "We emphasize our decision is not a final adjudication of the issue of actual or threatened misappropriation … and we have serious concerns over evidence in the record suggesting Whyte took Schlage's trade secrets or destroyed evidence." *Whyte*, 101 Cal. App. 4th at 1458.

LRN is not arguing that Philips will "inevitably disclose" LRN's trade secrets while employed by Midi. Rather, the complaint is based upon Philips' current conduct demonstrating Philips' intent to misappropriate LRN's trade secrets. Further, LRN is not seeking to prohibit

---

[4] While the former employer ("Schlage") in *Whyte* claimed that its former employee ("Whyte") had lied about returning and destroying its confidential information, in this case, Philips never provided any confirmation that she had returned all of LRN's trade secrets and confidential information despite numerous requests from LRN that she provide this confirmation. *See* Complaint ¶ 33. This sufficiently suggests improper conduct. Additionally, LRN sought affirmations that Philips was not improperly using its trade secrets on four separate occasions to no avail. Philips consistently refused to provide the assurances. *See* Complaint ¶ 39-46. Circumstances such as these were not at issue in *Whyte*.

[5] *But see Readylink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020, 24 Cal. Rptr. 3d 720, 729-30 (2005) (despite fact that some information was available to public and competitors, since former employer expended substantial time, effort and expense compiling information, it was considered a trade secret).

Philips from working for Midi, but rather is seeking enjoin to her from using trade secrets obtained by her while in the employ of LRN. California courts have permitted such cases to proceed and have ordered such relief. *See* LRN's Memorandum in Support of Its Motion for Preliminary Injunction, pp. 20-23.

    **C.    LRN Has Pled A Valid Cause Of Action For Breach Of Contract.**

Philips claims that LRN has failed to allege a single fact to support its breach of contract claim save an affidavit Philips properly refused to sign. *See* Motion p. 9. LRN's breach of contract claim is based upon Philips' contractual obligations set forth in the two Non-Disclosure Agreements with LRN, not an affidavit Philips refused to execute. *See* Complaint ¶¶ 14-19. For example, in one non-disclosure agreement, Philips stated "I will return all such items [LRN confidential information] to LRN ... immediately upon termination of my employment with LRN with or without such request." *See* Complaint ¶ 16. LRN "has not received any confirmation that Philips has returned all of LRN's trade secrets and Confidential Proprietary Information, despite numerous requests from LRN that Philips confirm that she does not have, and is not using, such information in her new position at a competitor." *See* Complaint ¶ 33.

Philips acknowledged, by signing these non-disclosure agreements, that LRN possesses trade secrets, that she would have access to these trade secrets while performing her job duties, that she would not misappropriate the trade secrets while employed by LRN or thereafter, and that she would return all of LRN's trade secrets and confidential information in her possession upon termination of her employment with LRN. *See* Complaint ¶¶ 15-20. Philips' actions, as described above, support a valid claim for breach of contract.[6]

---

[6] Philips' alleged breach of the agreements also results in irreparable harm to LRN. Such harm includes loss of trade secrets, loss of competitive advantage, loss of confidentiality of clients' records and dealings, loss of confidence and trust of clients, loss of goodwill, loss of business reputation, present economic loss, and future economic loss. *See* Complaint ¶¶ 49,62,67

Moreover, by signing these non-disclosure agreements, Philips acknowledged the validity of the agreements, her contractual obligations, the enforceability of the language, and the ramifications for failing to comply with those obligations. *See* Exhibits D, E to LRN's Memorandum in Support of its Motion for a Preliminary Injunction.

## IV.   CONCLUSION

For all the foregoing reasons, LRN respectfully requests that this Court deny Philips' Motion to Dismiss LRN's Complaint.

Dated: September 23, 2005

Respectfully submitted,

_____
Michelle L. Schaefer
(D.C. Bar # 478773)
Roxane Sokolove Marenberg
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, N.W.
Washington, DC 20036
202.861.3900 – Telephone
202.223.2085 – Facsimile

Counsel for Plaintiff LRN Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 23rd day of September, 2005, a copy of the foregoing LRN Corporation's Opposition to Defendant's Motion to Dismiss, was served through first class mail and electronically upon:

> Rodney Leffler, Esquire
> Timothy Hyland, Esquire
> **LEFFLER & HYLAND**
> 4163 Chain Bridge Road
> Fairfax, Virginia 22030-4102
> 703/293-9300 (Telephone)
> 703/293-9301 (Facsimile)

_____
Michelle L. Schaefer

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LRN CORPORATION, )<br>)<br>    PLAINTIFF/ )<br>    COUNTERCLAIM )<br>    DEFENDANT )<br>)<br>    v. )<br>)<br>A. MERRILL PHILIPS, )<br>)<br>    DEFENDANT/ )<br>    COUNTERCLAIM )<br>    PLAINTIFF )<br>_____) | CASE NO. 1:05cv01652<br>Judge: Emmet G. Sullivan |

## ORDER

Upon consideration of Defendant's Motion to Dismiss, Plaintiff's Opposition to Defendant's Motion to Dismiss and any oral argument,

**IT IS HEREBY ORDERED** this ___ day of _____, 2005, that Defendant's Motion is **DENIED**.

Dated: _____

_____
Judge Emmet G. Sullivan