IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LRN CORPORATION,　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　PLAINTIFF/　　　　　　　　　　)<br>　　COUNTERCLAIM　　　　　　　　　)<br>　　DEFENDANT　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>A. MERRILL PHILIPS,　　　　　　　 )<br>　　　　　　　　　　　　　　　　　)<br>　　DEFENDANT/　　　　　　　　　　 )<br>　　COUNTERCLAIM　　　　　　　　　 )<br>　　PLAINTIFF　　　　　　　　　　　)<br>_____) | CASE NO.: 1:05cv01652<br>Judge: Emmet G. Sullivan |

### LRN CORPORATION'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Defendant A. Merrill Philips ("Defendant" or "Philips") Opposition to LRN Corporation's ("Plaintiff" or "LRN") Motion for a Preliminary Injunction is remarkable in its thinly veiled attempt to avoid the entry of a preliminary injunction by disparaging LRN's management practices and treatment of employees, and suggesting some ulterior motive for the instant litigation.

The California Trade Secrets Act ("CUTSA") states "Actual or threatened misappropriation may be enjoined." *See* Cal. Civ. Code § 3426.2 (*emphasis added*). The gravamen of LRN's complaint and motion for preliminary injunction is Philips' conduct and actions taken to date that demonstrates the actual or threatened misappropriation of LRN's trade secrets. This conduct, described in LRN's Motion, and LRN's detailed description of those trade secrets it seeks to protect from misappropriation, warrants protection through an injunction. *See Whyte v. Schlage Lock Company*, 101 Cal. App. 4th 1443, 1455, 125 Cal. Rptr. 2d 277 (2002) ("a party seeking to protect trade secrets must describe the subject matter of the trade secret with

sufficient particularity to separate it from matters of general knowledge, and to permit the defendant to ascertain the boundaries within which the secret lies.").

The undisputed facts are: Philips, a former Regional Director of Customer Relations for LRN, is intimately familiar with LRN's confidential and proprietary information; Philips signed two non-disclosure agreements at the inception of her employment with LRN; Philips refused to advise LRN she was leaving LRN to work for a competitor; Philips is working for LRN's competitor; Philips refused to sign a confirmation upon the cessation of her employment with LRN affirming that she would not improperly use LRN's trade secrets; Philips refused to acknowledge her return of all of LRN's confidential and proprietary information; despite numerous requests, Philips refused on numerous occasions to formally acknowledge she was in compliance with the terms of her non-disclosure agreements and not misappropriating LRN's confidential and proprietary information; and Philips, and her new employer, Midi, are in a position to gain an unfair competitive advantage over LRN because of Philips' prior employment at LRN and the knowledge she gained in that position.

By seeking a preliminary injunction, a business legitimately seeks to shield itself from the irreparable injury that can result from the exploitation of its trade secrets and to ensure that its confidential and proprietary information are not improperly disclosed. That is exactly what LRN has done.

I.   **ARGUMENT**

    A.   **The Circumstances Point To Actual Or Threatened Misappropriation.**

Philips suggests that in order to state a claim for actual or threatened misappropriation of trade secrets, LRN must demonstrate that she *actually* misappropriated information and her

actions damaged LRN.[1] *See* Memorandum in Opposition to Motion for Preliminary Injunction (hereinafter "Opposition p. __") pp. 12-13. The CUTSA, upon which LRN's claims are based, however, clearly states "Actual <u>or threatened misappropriation</u> may be enjoined." *See* Cal. Civ. Code § 3426.2 (*emphasis added*).

Upon learning that Philips was working for a competitor, LRN asked Philips to acknowledge the return of LRN's confidential information in her possession, and LRN sought sworn assurances from Philips that she was not misappropriating LRN's confidential information. *See* LRN's Memorandum in Support of its Motion for a Preliminary Injunction (hereafter "Motion p. __") pp. 10-11. Philips' continuous refusal to provide assurances, coupled with LRN's knowledge that Philips had refused to sign a confirmation agreeing not to improperly use LRN's confidential and proprietary information when she departed from LRN, properly led LRN to believe Philips was acting, or planning to act, improperly.[2] Given the nature of LRN's business, and the amount of confidential information to which Philips was privy, LRN is justified in seeking immediate relief from the Court in order to protect its business interests.

In determining whether threatened misappropriation exists, courts look to the suspicious or uncooperative behavior on the part of the departing employee's part. When an employee deceives his former employer about having taken a job with a competitor or the nature and scope of his new employment, an injunction may be triggered. *See PepsiCo, Inc. v. Redmond*, 54 F.3d

---

[1] Philips' reliance on *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 3 Cal Rptr. 3d 279 (2003) is misplaced. The court addressed the burden of proof during trial and proposed jury instructions on the alleged improper use of a trade secret at the outset and during trial. The misappropriation claim was based upon the defendant's alleged <u>use</u> of a trade secret in connection with the development of a new in-flight aircraft refueling system. The defendant denied use of plaintiff's trade secret claiming it "reversed engineered and independently developed the device."

[2] Philips' claims that LRN has filed this lawsuit without any evidence of wrongdoing in order to hurt and defame Philips (*see* Opposition pp. 7, 11) are untrue.

1272, 1270-71 (7th Cir. 1995). The fact that an employee retains information acquired from his employer also gives rise to the inference of intent to use. *See Surgidev Corporation v. Eye Technology, Inc.*, 648 F. Supp. 661, 695 (D. Miss. 1986) (actual or threatened misappropriation requires proof that there is an intention on the part of the defendants to use or disclose the putative trade secrets) (*applying* Minnesota and California law). It is also well settled that an injunction may issue barring unauthorized disclosure and use of trade secrets before such use or disclosure occurs. At the preliminary stage of proceedings, the facts may warrant a conclusion of threat of disclosure or wrongful conduct without an enumeration of the specific secrets. *See Allis Chambers Manufacturing Co. v. Continental Aviation, et al.*, 255 F. Supp. 645, 654 (E.D. Mich. 1966) (court enjoined use of trade secrets by issuing preliminary injunction).

The ruling in *Lejeune v. Coin Acceptors, Inc.*, 381 Md. 288, 849 A.2d 451 (Md. 2004) is also instructive in defining "threatened misappropriation."[3] In *Lejeune*, the court found that the evidence established a former employee's threatened misappropriation. The employee announced he was going to work for a competitor, told his former employer he would be in a "unique" position with the competitor thereby suggesting he might use the employer's confidential information in his new employment, and retained the employer's confidential information. Additionally, the fact that the competing employer twice reminded the employee not to disclose his former employer's confidential information suggested that the employee had displayed some propensity to disclose trade secrets. *See Lejeune*, 381 Md. at 315, 849 A.2d at 467; *see also Ackerman v. Kimball International, Inc.*, 652 N.E.2d 507, 510-511 (Ind. 1995) (upholding the trial court's finding that the defendant's "pre-departure harvesting" of the plaintiff's "proprietary information" suggested a threat of misappropriation.).

---

[3] The Maryland and California Trade Secrets Acts are both based on the Uniform Trade Secrets Act. Both statutes allow for the issuance of injunctions to prevent actual or threatened misappropriation. *See* Md. Code Ann. § 11-1202 and Cal. Civ. Code § 3426.2.

Here, the evidence is far more compelling. Philips was responsible for confidential sales relationships with clients, and, accordingly had access to confidential and proprietary information used to forge relationships with LRN clients and prospective clients, and sell LRN products and services. *See* Motion pp. 3, 9-10. She <u>never</u> disclosed that she was going to work for a competitor. *See* Motion p. 3. At the time of her resignation, Philips refused to sign an Intellectual Property and Confidentiality Employee confirmation.[4] Rather, when LRN sought specific assurances from Philips that she was in compliance with her non-disclosure agreements after learning that she was working for a competitor, Midi, Philips refused to provide such assurances on four separate occasions. *See* Motion pp. 12-14. Philips refused to acknowledge she returned LRN's property even though she was required to return all of it after her departure, and even though LRN sought confirmation of the return of such property on numerous occasions. *See* Motion p. 11. As was the case in *Lejeune*, this evidence suggests that Philips has, or threatens to, misappropriate LRN's trade secrets in her new employment at Midi is sufficient to support issuance of a preliminary injunction.

      B.      **LRN Has Sufficiently Identified Information Constituting Protectable Trade Secrets.**

In *Whyte v. Schlage Lock Company*, 101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002), the court stated:

> "At this [preliminary injunction] stage, a party seeking to protect trade secrets must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"

---

[4] The Intellectual Property and Confidentiality Employer Confirmation provided "You have agreed to maintain all of LRN … confidential information in absolute secrecy. You should not take any materials containing confidential information with you. You may not directly or indirectly share or allow access to this information." *See* Motion, p. 10.

*Whyte*, 101 Cal. App. 4th at 1453 (*citing Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253, 67 Cal. Rptr. 19 (1968)). In *Whyte*, the court found that the former employer had sufficiently identified its trade secrets. The employer used general descriptions such as "products sold to its customers," "costs in producing the products," "payment terms," and "advertising, sales and promotion." *Whyte*, 101 Cal. App. 4th at 1452.

LRN's trade secrets are described with the requisite specificity to permit Philips to identify and understand the protected information. The trade secrets available to Philips as a result of her employment with LRN include: client contracts for virtually the entire span of LRN's products and services; client pricing information; client-specific customized programs and seminars; research and development materials used to create programs, seminars, and proposals; the duration of client-specific contracts; renewal terms of such contracts; and information about products and services that LRN clients used in the past, clients' needs in the future, or the products and services that clients have rejected. *See* Motion pp. 3, 9-10. LRN's trade secrets are thus described with sufficient particularity to deserve trade secret protection.

    C.    **LRN's Confidential Information is Worthy of Protection.**

Under California law, a trade secret is defined as information including a pattern, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *See* Cal. Civ. Code § 3426.1(d). Importantly, the California trade secrets statute does not require that information "not be readily ascertainable by proper means by others" in order to qualify as a trade secret. *See ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21, 286 Cal. Rptr. 518, 528 (1991). The only information excluded is that which others within the industry already know, not new concepts that competitors have not yet

6

ascertained, but could easily discover. *Id.* at 21, 286 Cal. Rptr. at 529; *see also Readylink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020, 24 Cal. Rptr. 3d 720 (2005) (even though some of the enjoined information may have been available to the public and to the competitor, the evidence established that the former employer's information was procured by substantial time, effort and expense thereby entitling it to trade secret protection); *Courtesy Temporary Services, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288, 272 Cal. Rptr. 352, 358 (1990) (even if the information could be found in public sources, evidence established that it was the product of substantial amount of time, expense and effort and was thereby entitled to trade secret protection).

Philips argues that certain information LRN identifies as proprietary and confidential was provided to LRN clients and prospects, and published on the internet, thereby negating the trade secret nature of the information. *See* Opposition pp. 13-14. While some information in Philips' possession may not constitute trade secrets, the information outlined above, in addition to that set forth in LRN's Motion, which does constitute protectable trade secret information, is in her possession and must be protected. Philips was responsible for confidential sales relationships with clients. *See* Motion pp. 3, 9-10. She has exclusive knowledge of LRN's clients and prospective clients, as well as intimate knowledge of the products and services that LRN sells. *Id.* The client specific details, and prospective client-specific details that Philips had access to were not disclosed to the public. *See* Motion pp. 6-8. This information derives independent economic value from not being generally known to the public or to competitors such as Midi. LRN ensures the secrecy of this information by limiting access to it, and by requiring employees to sign non-disclosure agreements, as LRN did with Philips. *See* Motion pp. 3, 6-8. Moreover,

LRN's confidential and proprietary information is the product of a substantial amount of time, expense and effort, thereby reinforcing its trade secret status.

### D. LRN Was Justified In Seeking Sworn Affirmations From Philips.

Philips claims this lawsuit is a device to force her to sign an affidavit she properly refused to execute and which cannot form the basis for a misappropriation claim or preliminary injunction. Opposition pp. 1, 6-7, 17-19. That LRN asked Philips to confirm the fact she was not misappropriating any trade secrets or confidential information by executing an affidavit once LRN learned Philips was employed by Midi, in no way undermines LRN's ability to obtain a preliminary injunction.[5]

The language in the proposed affidavit addressed LRN's legitimate business concerns; the same concerns reflected in Philips' non-disclosure agreements she executed upon employment with LRN. LRN wanted to ensure that Philips complied with her legal obligations under her non-disclosure agreements with LRN. It also wanted to protect its legitimate business interests, having learned that Philips was working for Midi, a direct competitor, and knowing that Philips had extensive knowledge of LRN's trade secrets yet refused to acknowledge the return of the LRN information in her control. Accordingly, the affidavit was drafted broadly to encompass any potential or actual wrongful conduct, and not, as Philips argues, to secure an admission she had engaged in wrongful behavior.

---

[5] While Jeffrey London, Esq., at the time counsel for Midi and Philips, informed LRN that Philips was not misappropriating any information (*see* Opposition p. 3), these assurances from counsel are insufficient. Philips, not her then counsel, has contractual obligations to LRN. Philips' excuse that she did not sign the affidavit submitted to her by LRN because she had already signed confidentiality and trade secret agreements at the inception of her employment with LRN (*see* Opposition p. 6) is unpersuasive. Upon learning that Philips was working for a direct competitor, Midi, and knowing that disclosure of its confidential information to Midi could prove devastating, LRN needed additional assurances. LRN's efforts to be cautious and protect itself are even more reasonable in light of Philips' own admission that "it is believed that Philips ... are [*sic*] the first LRN employees who went directly to a competitor." *See* Opposition pp. 8, 16.

The affidavit simply asked Philips to agree not to violate any terms in the non-disclosure agreements previously entered into with LRN, to refrain from using or disclosing any of LRN's trade secrets and/or confidential information to solicit LRN's clients and employees, and to return to LRN all of its property.[6] *See* Motion pp. 12-13. That Philips now provides the assurances LRN legitimately sought prior to this litigation and/or has an explanation for her refusal to provide such assurances is irrelevant to the merits of LRN's complaint or request for a preliminary injunction.

### E. The Doctrine Of Inevitable Disclosure is not "LRN's Apparent Legal Theory."

Philips' assumption regarding LRN's legal theory and her reliance on *Whyte v. Schlage Lock Company*, 101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002) and *Bayer Corp. v. Roche Molecular Systems, Inc.*, 72 F.Supp. 2d 1111 (N.D. Cal. 1999) is misplaced. *See* Opposition at pp. 18-21. First, in both *Whyte* and *Bayer*, former employers unsuccessfully attempted to enjoin misappropriation of trade secret information under the doctrine of inevitable disclosure. The *Whyte* court described the doctrine as follows, "The doctrine of inevitable disclosure permits a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets." *Whyte*, 101 Cal. App. 4th at 1446. The courts' refusal in *Whyte* and *Bayer* to enter preliminary injunctions was based on the absence of any evidentiary support for the alleged misappropriation -- short of

---

[6] The affidavit also asked Philips to cease making negative representations about LRN. In her Opposition, Philips, states that she has not made negative comments about LRN to "potential customers". *See* Opposition p. 18. Philips never states that she has not made any negative comments about LRN to people other than "potential customers." She also devotes a significant portion of her brief and affidavit to criticizing and disparaging LRN. Philips obviously has strong feelings about LRN, and her failure to acknowledge that she has not made any negative representations about LRN strongly suggest that she has, in fact, disparaged LRN.

9

inevitable disclosure.[7] Importantly, the *Whyte* court stated: "We emphasize our decision is not a final adjudication of the issue of actual or threatened misappropriation ... and we have serious concerns over evidence in the record suggesting Whyte took Schlage's trade secrets or destroyed evidence." *Whyte*, 101 Cal. App. 4th at 1458.

LRN is not arguing that Philips will "inevitably disclose" LRN's trade secrets while employed by Midi. Rather, Philips' <u>current conduct</u> suggests that Philips has or threatens to misappropriate LRN's trade secrets. Further, LRN is not seeking to prohibit Philips from working for Midi, but rather is seeking to enjoin her from using trade secrets obtained by her while in LRN's employ. As explained in LRN's Motion for Preliminary Injunction, California courts have ordered such relief. *See* Motion pp. 20-22.

In *Bayer*, the court denied injunctive relief because it found that the evidence did not support the former employer, Bayer's, allegations of actual or threatened use or disclosure. The court stated: "In brief, the Court finds that Bayer's specific evidence of actual use fails, either because the information was not really private or because it was already known by [competitor] Roche." *Bayer*, 72 F.Supp. 2d at 1117. As demonstrated above, the confidential information acquired by Philips while employed by LRN is private, secret, and entitled to trade secret protection.

---

[7] While the former employer ('Schlage") in *Whyte* claimed that its former employee ("Whyte") had lied about returning and destroying its confidential information, in this case, Philips never provided any confirmation that she had returned all of LRN's trade secrets and confidential information despite numerous requests from LRN that she provide this confirmation. *See* Motion pp. 12-13. Upon her departure from LRN, she also refused to sign a Confirmation affirming that she would not improperly use LRN's trade secrets. *See Motion pp. 10-11*. This suggests improper conduct. Additionally, LRN sought affirmations that Philips was not improperly using its trade secrets on four separate occasions to no avail. Philips consistently refused to provide the assurances. *See* Motion pp. 13-16. Circumstances such as these were not at issue in *Whyte*.

**F.      The Irreparable Injury That LRN Will Suffer From Misappropriation Outweighs Any Harm To Philips.**

As set forth in LRN's Motion for Preliminary Injunction, if injunctive relief is denied, LRN stands to lose significantly more than Philips would lose if the injunction were granted. LRN will be forced to spend significant resources and expend substantial efforts to ensure that Philips does not take unfair advantage of the knowledge she acquired while employed by LRN. Philips has intimate knowledge of confidential and proprietary LRN information, such as client-specific and prospective client-specific research, needs, and practices.  Equipped with this information, Philips is in a position to: (1) give Midi, LRN's competitor, an opportunity to gain an unfair advantage against LRN and the market; and (2) use LRN's confidential information to attempt to solicit LRN's clients and prospective clients away from LRN.  LRN will also suffer irreparable harm from the loss of its business, and the concomitant loss of customer trust and good will.

The financial losses, and therefore legal remedies, from Philips' wrongful conduct are difficult, if not impossible, to measure precisely.  It is impossible at this time to determine how Philips and Midi can, or will, use LRN's confidential and proprietary information or the number of LRN clients or prospective clients who may be improperly solicited by Philips.  What is certain is that Philips must not be allowed to profit from her improper behavior.  LRN is entitled to protection of its confidential methods of business operation and contract rights.  LRN is also entitled to protect its business reputation and goodwill.  When LRN's potential injury is measured against any alleged harm to Philips, the balance strongly tips in favor of LRN.  An injunction would simply restrain Philips from improperly using LRN's trade secrets, protect LRN against unfair competition, and compel Philips to do what she already has agreed to by signing the non-disclosure agreements at the inception of her employment with LRN.  The

granting of a preliminary injunction will simply uphold the terms already agreed upon by the parties in their non-disclosure agreements, thereby reinforcing the value of legal contracts. Such relief is, therefore, in the public interest.

## II.   CONCLUSION

For all the foregoing reasons, and the reasons set forth in LRN's Motion for Preliminary Injunction, this Court should order the requested temporary and preliminary injunctive relief, and no bond should be required.

Respectfully submitted,

*/s/ Michelle Schaefer*
Michelle L. Schaefer
(D.C. Bar # 478773)
Roxane Sokolove Marenberg
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, N.W.
Washington, DC 20036
202.861.3900 – Telephone
202.223.2085 – Facsimile

Counsel for Plaintiff LRN Corporation

September 23, 2005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 23rd day of September, 2005, a copy of the foregoing LRN Corporation's Reply to Defendant's Opposition to Motion for Preliminary Injunction, were served through first class mail and electronically upon:

Rodney Leffler, Esquire
Timothy Hyland, Esquire
**LEFFLER & HYLAND**
A Professional Corporation
4163 Chain Bridge Road
Fairfax, Virginia 22030-4102
703-293-9300 (phone)
703-293-9301 (fax)

_____
Michelle L. Schaefer