# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LRN CORPORATION, )<br>)<br>Plaintiff and )<br>Counterclaim Defendant, )<br>)<br>v. )<br>)<br>A. MERRILL PHILIPS, )<br>)<br>Defendant and )<br>Counterclaim Plaintiff. ) | Case No. 1:05CV01652<br>Judge: Emmet G. Sullivan |

## REPLY BRIEF IN SUPPORT
## OF MOTION TO DISMISS

The defendant, A Merrill Philips ("Philips"), respectfully submits the following reply brief in support of her motion to dismiss.

### I

### Introduction

Unable to justify its meritless Complaint, the plaintiff, LRN Corporation ("LRN"), asserts that Philips misunderstands its claims. To the contrary, LRN's claims are clear – it seeks to have this Court enter an injunction prohibiting Philips from doing things that LRN does not, and cannot, allege she is doing. Further, in a virtually identical case brought by LRN against another employee, the United States District Court for the Eastern District of Virginia has ruled that LRN's Complaint does not state a claim. The instant action should meet the same fate.

## II

## Facts

In its Opposition, LRN selectively omits mention of relevant facts, and retreats from its own allegations and the exhibits attached to its Memorandum in Support of its Motion for Preliminary Injunction ("PI Memo"). First, citing to Complaint ¶ 33, LRN states that it never received confirmation that Philips returned all of LRN's trade secrets and confidential information. Yet, as revealed in PI Memo, Exhibit I, on July 18, 2005, Philips affirmed that she had complied with all of her contractual, statutory and common law obligations to LRN.[1] Ten days later, Philips's counsel affirmed that Philips was abiding by her obligations to LRN, advised LRN that Philips was bound by the terms of her agreement with her new employer, Midi Corporation ("Midi") to do so, and requested that if "LRN has a factual basis to support its position that [Philips is] in violation of this non-disclosure provision, we encourage LRN to provide us with some substantive support for such a basis and Midi will promptly investigate it." PI Memo, Exhibit N. LRN did not, and has not to date, provided any support for its claims.[2]

Second, LRN mischaracterizes its "cease and desist" letter as "requesting an affirmation that [Philips] not use LRN's trade secrets and proprietary information." Opposition at 2. The affidavit demanded by LRN in its cease and desist letter sought no such "affirmation." The affidavit (Complaint ¶ 40; PI Memo, Exhibit G), was framed so as to constitute admissions

---

[1] Further, it is uncontroverted that before she left LRN, Philips approached Joanna Jose, LRN's Human Resources manager, and asked what she should do with documents in her possession. Ms. Jose instructed Philips to destroy the documents, and Philips did so. See Declaration of A. Merrill Philips, attached to her Memorandum in Opposition to Motion for Preliminary Injunction, ¶ 3.

[2] Despite having received these assurances, LRN repeatedly asserts that Philips refused to provide it with assurances that she was not violating her agreements. LRN's statements are very close to crossing the line between zealous advocacy and an attempt to mislead the Court.

by Philips that she would "stop" or "cease" violating LRN's purported rights – violations that Philips was not committing.[3] Further, LRN's affidavit required Philips to make further promises about not making negative or disparaging comments about LRN – promises Philips was not obligated to make.[4]

LRN's lack of factual basis for its claims is likewise made clear by its Opposition. LRN does not identify a single trade secret that Philips has misappropriated or threatened to misappropriate. Indeed, LRN carefully frames its language in terms of potentialities. For instance, LRN cites to "the injury that LRN will suffer *if* Philips *were to* unfairly make use of LRN's trade secrets . . ." and "Philips is *in a position where she has, or threatens to*, disclose or use LRN's trade secrets and confidential information . . . ." (Opposition at 2) (emphasis added). The same could be said for virtually every current and former employee of every company. Mere potentialities do not provide a basis for a lawsuit.

---

[3] In considering identical arguments by LRN regarding an identical affidavit sent by LRN to another employee, a Court has stated ". . . any reasonable reading of that affidavit that was tendered to this defendant would [cause her to] be concerned because it seemed to suggest quite clearly that there already had been misconduct. So if your next argument was going to be her refusal to sign the affidavit, I don't find that it has any merit given the nature of the affidavit that was submitted to her." E.D. Va. Transcript at 5 (as discussed in Section III.A., below).

[4] The falsity of LRN's claim that it only desired that Philips affirm that she was not misappropriating its trade secrets and that she returned all of its proprietary documents is revealed by the fact that it has not moved, on its own motion, to dismiss this case. Philips has furnished such an affidavit, yet LRN persists in pursuing this action. See Declaration of A. Merrill Philips, attached to her Memorandum in Opposition to Motion for Preliminary Injunction, ¶ 1 ("I have not used or disclosed any confidential information or trade secrets belonging to LRN and do not intend to do so."); ¶ 3 ("I have returned or destroyed all LRN information I received during my employment with LRN."); ¶ 13 ("I left LRN over five months ago and have not used or disclosed any LRN information to date. There is no reason for LRN to think that I may do so in the future."). Because LRN now has received these statements, it is objectively unreasonable for it to continue pursuing this litigation. See Robertshaw Controls Co. v. Weerstra, 1990 U.S. Dist. LEXIS 17380 (W.D. Mich. 1990) (imposing Rule 11 sanctions on a plaintiff in a trade secrets action for continuing to pursue litigation after it became apparent that the defendant agreed not to misappropriate trade secrets).

## III

## Argument

### A

### The Companion Case to this Action Has Been Dismissed

On the same date that LRN filed this action, LRN filed a substantively identical action against another former employee, Julie K. Moriarty ("Moriarty"), in the United States District Court for the Eastern District of Virginia. See LRN Corp. v. Moriarty, E.D. Va., Civ. No. 1:05cv937. Moriarty, like Philips, resigned from LRN and went to work for Midi Corporation ("Midi"). LRN made the same demands upon, and threats to, Moriarty that it made to Philips. And LRN's arguments in the instant case are identical to those it made in its action against Moriarty.

On September 30, 2005, District Judge Leonie M. Brinkema held a hearing on Moriarty's Motion to Dismiss. A transcript of the hearing is attached hereto as *Exhibit A* ("E.D. Va. Transcript"). Judge Brinkema granted Moriarty's Motion to Dismiss, stating:

> There is simply in this case under this scenario of the facts known to the plaintiff at this point, even under the California law that talks about threatened misappropriation, the mere fact that a highly placed employee leaves an employer without giving them clear, you know, specific notice about leaving, goes to work for a competitor, and refuses to sign very strong, misleading documents, in my view is not enough to establish, even at the early pleading stages that there is enough evidence to believe that there's been a threatened misappropriation. So I am going to grant the motion to dismiss, which moots the issue about the preliminary injunction.

E.D. Va. Transcript at 15-16.

There is no material difference between the Complaint in the instant case and the Complaint in LRN Corp. v. Moriarty. Philips respectfully requests that the Court adopt the reasoning adopted by Judge Brinkema, and dismiss this action as well.

**B**

**LRN Fails to State a Claim for Misappropriation of Trade Secrets**

Confronted with the patent falsehood of its allegations, as revealed by its own pleadings, LRN retreats from its position that Philips has actually misappropriated its trade secrets. Instead, LRN relies solely upon a theory that Philips has *threatened* to misappropriate its trade secrets, *solely* by virtue of Philips taking a job with a competitor. In trying to salvage its claim in this way, LRN cites to PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995); Surgidev Corp. v. Eye Tech., Inc., 648 F. Supp. 661 (D. Minn. 1986); Allis-Chalmers Mfg. Co. v. Continental Aviation, & Eng'g Corp., 255 F. Supp 645 (E.D. Mich. 1966); Lejeune v. Coin Acceptors, Inc., 381 Md. 288, 849 A.2d 451 (2004); and Ackerman v. Kimball Int'l, Inc., 652 N.E.2d 507 (Ind. 1995). In fact, these cases all demonstrate why LRN's Complaint must be dismissed.

The parties agree that California law governs the instant case. In Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002), the Court of Appeals of California expressly rejected the holdings in PepsiCo and SurgiDev, as both were founded upon the "inevitable disclosure doctrine." Id. at 1460, 125 Cal. Rptr. at 291.[5] Further, SurgiDev dealt primarily with <u>actual</u> misappropriation, a claim that LRN concedes it cannot make. Allis-Chalmers, a case that pre-dates the enactment of the Uniform Trade Secrets Act, also relied upon an inevitable disclosure theory. However, even Allis-Chalmers demonstrates that LRN's claim cannot survive: "A trade secret will not be protected by the extraordinary remedy of injunction on mere suspicion or apprehension of injury. There must be a substantial threat of impending injury before an injunction will issue." 255 F. Supp. at 654. In the case at bar, LRN cites to

---

[5] Despite relying on these and other "inevitable disclosure" cases, LRN contends, without a reasonable explanation, that its claims are not based upon the inevitable disclosure doctrine. See Opposition at 5-7.

vague suspicions and apprehensions and does not cite to a single action Philips has taken in her position at Midi, or any actual threats Philips has made. LRN's unsubstantiated feelings are not enough to establish a claim.

Lejeune actually supports Philips's position. In Lejeune, the Court of Appeals of Maryland, relying on Whyte, rejected the applicability of the inevitable disclosure doctrine. 381 Md. at 320-22, 849 A.2d at 470-71. Thus, it vacated an injunction entered against an employee on that basis. The Court did note, however, that there was some evidence of threatened misappropriation of trade secrets, because the defendant made statements that indicated that he would do so, and he copied computer files from his former employer after he announced his departure and stated that he had returned all of the employer's confidential materials. See 381 Md. at 315, 849 A.2d at 467 n.8. However, in the case at bar, LRN does not allege that Philips has ever said anything to indicate that she would violate its trade secret rights or that she made any false statements, nor does it allege that she took any of its trade secret information with her to Midi. To the contrary, LRN alleges only that Philips denied doing so.

Ackerman, an Indiana case, involved the enforcement of a non-competition agreement, which is not at issue in the case at bar. Indeed, the Indiana Court of Appeals has specifically held that Ackerman is limited to its facts, in cases where there exists an enforceable non-competition agreement. See U.S. Land Servs., Inc. v. Harding, 826 N.E.2d 49, 69 n.5 (Ind. App. 2005). Furthermore, Ackerman involved data mining by the employee of his former employer's computer files. LRN makes no such allegation, nor can it, here.

Unlike the cases relied upon by LRN, Philips did not renounce her confidentiality agreement. In fact, she assured LRN, twice before this litigation was filed, that she had and would continue to honor it. Philips has never lied about her possession of LRN's confidential

information. Indeed, despite LRN's insistence that she do so by signing a false affidavit, Philips affirmatively refused to lie. And Philips assured LRN that she retained no documents or contracts belonging to LRN. Incredibly, LRN is suing because Philips would not falsely swear that she committed the wrongs she is being sued for. The absurdity of LRN's position is manifest.

LRN cites to the fact that Philips did not reveal that she was going to work for a competitor as evidence of her intent to misappropriate trade secrets. It should be noted that Philips did nothing to mislead LRN, as was the case in the authorities cited by LRN. Further, Philips's reluctance to inform LRN in advance where she was going is, in this case, understandable. As set forth in Declaration of Julie Philips, attached to her Memorandum in Opposition to Motion for Preliminary Injunction, ¶¶ 16-19 (which facts are uncontroverted by LRN), LRN has a history of disparaging, harassing and making false statements about former employees. Because Philips was going to a competitor of LRN, she suspected, correctly, that LRN would go to any extreme to make baseless statements about her, thus endangering her career. Under these circumstances, Philips's failure to reveal that she was going to work for Midi is not evidence of duplicity.

Lastly, LRN identifies not a single trade secret that Philips has threatened to misappropriate.[6] In ruling against a trade secrets plaintiff, the United States Court of Appeals for the Seventh Circuit stated:

---

[6] In LRN v. Moriarty, Judge Brinkema pointed out that ". . . notice pleading notwithstanding, I think in these types of cases, unless the plaintiff has some specific instance they can point to of a misuse of a trade secret, it is simply not sufficient [to allege] that an employee who may have had access to proprietary information and who has gone to a competitor is necessarily breaching the agreement." E.D. Va. Transcript at 3.

> AMP has consistently failed throughout this litigation to identify any particularized trade secrets actually at risk. Prior to trial, AMP submitted six single-spaced, typewritten pages listing by general item and category hundreds of pieces of AMP internal information. Other courts have warned plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets. In its principal brief to this Court, AMP has again refused to specify precisely what trade secrets it believes to be at risk by identifying particular documents or other sources of information, relying on its by now familiar refrain that Mr. Fleischhacker has misappropriated "confidential business and technical information."

AMP Inc. v. Fleischhacker, 823 F.2d 1199, 1203 (7th Cir. 1987). LRN takes the same approach here, identifying no trade secrets that Philips has misappropriated or threatens to misappropriate. Because it has no factual basis for its claims that Philips has misappropriated or threatened to misappropriate any trade secrets or confidential information, it identifies only the information to which Philips was allegedly privy while employed by LRN. Merely having knowledge of trade secrets is not actionable. It has been held:

> More than a risk of irreparable harm must be demonstrated . . . . [An injunction] may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights . . . . [I]njunctions will not be issued merely to allay the fears and apprehensions or to sooth the anxieties of the parties . . . . A trade secret will not be protected by the extraordinary remedy of injunction on mere suspicion or apprehension of injury. There must be a substantial threat of impending injury before an injunction will issue . . . . In the absence of a covenant not to compete or a finding of actual or an intent to disclose trade secrets, employees "may pursue their chosen field of endeavor in direct competition" with their prior employer . . . . Merely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction.

Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 148 F. Supp. 2d 1326, 1338 (S.D. Fla. 2001) (quoting Int'l Bus. Mach. Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 101 (D. Minn. 1992)). See also H&R Block Eastern Tax Svcs., Inc. v. Enchura, 122 F. Supp. 2d 1067, 1075

(W.D. Mo. 2000) (stating that inevitability is not enough to justify injunctive relief and that a finding of unwillingness to preserve confidentiality is required).

LRN purports to fear or apprehend injury, despite Philips's repeated assurances that she has not, and will not, violate her obligations. This is plainly not sufficient to state a claim. Thus, LRN's claims must necessarily fail, and Counts I and the first Count III must be dismissed.

### C

### LRN Fails to State a Claim for Breach of Contract

LRN now states that its breach of contract claim is founded upon its claim that in one contract, Philips agreed to "return all such items [LRN confidential information] to LRN . . . immediately upon termination of my employment with LRN with or without such request." Opposition at 7 (citing Complaint ¶ 17). Yet, LRN continues on to contend that Philips breached the contract because LRN "has not received any confirmation that Philips has returned all of LRN's trade secrets and Confidential Proprietary Information, despite numerous requests . . . ." Opposition at 7 (citing Complaint ¶ 33). The logical disconnect is apparent. Assuming, *arguendo*, that LRN's allegations are true, LRN does not allege that Philips was contractually obligated to ensure that LRN received confirmation that she complied with her obligations. If this were so, LRN might have stated a claim for breach of contract—which would have been satisfied upon receiving Ms. Philips's letter confirming such compliance. But there is no such contractual provision and, thus, no breach of contract.

Further, LRN alleges that the non-disclosure agreements require that Philips "would not misappropriate the [LRN] trade secrets while employed by LRN or thereafter." Opposition at 7. Again, LRN does not identify a single trade secret that Philips has misappropriated. Indeed, in its Opposition, LRN retreats from its allegations that Philips misappropriated any trade secrets.

9

See Opposition at 3 ("The actual improper use of a trade secret is not a prerequisite to alleging a viable cause of action under the CUTSA."). Because the Complaint does not identify any trade secrets that Philips has misappropriated, the breach of contract claim cannot survive.

Accordingly, the second Count III must be dismissed.

## IV

### Conclusion

LRN has failed to allege sufficient facts to support any claim for trade secret misappropriation or breach of contract. The Complaint must be dismissed, with prejudice, allowing Philips to pursue her counterclaim for attorneys' fees.

A. MERRILL PHILIPS
By Counsel

**NEWBERG & WINTERS LLP**
8300 Boone Boulevard
Suite 500
Vienna, Virginia 22182
(703) 714-9530
Facsimile (703) 991-4516

By: _/s/ Brad R. Newberg_
Brad R. Newberg (D.C. Bar No. 467898)
Christopher Winters (D.C. Bar No. 461454)
Counsel for Philips

Of Counsel:

Rodney G. Leffler
Timothy B. Hyland
LEFFLER & HYLAND
A Professional Corporation
4163 Chain Bridge Road
Fairfax, Virginia 22030-4102
(703) 293-9300
Facsimile (703) 293-9301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Reply Brief in Support of Motion to Dismiss was mailed, first class mail, postage prepaid, this 3rd day of October, 2005, to:

>Michelle L. Schaefer, Esquire
>Roxanne Sokolove Marenberg, Esquire
>DLA PIPER RUDNICK GRAY CARY US LLP
>1200 Nineteenth Street, N.W.
>Washington, D.C. 20036

_____
Brad R. Newberg